JOHN MARTIN, Appellant, *v.* THE CENTRAL VERMONT RAILROAD COMPANY, Respondent.

*Due process of law — attachment of the property of a non-resident debtor — notice must be given to the debtor — full faith and credit given to judicial proceedings of another State.*

In an action, brought in a Justice's Court, in the State of Vermont, an attachment was issued against the property of the defendant therein, who was a non-resident of that State, and had no agent or attorney therein, and was served by delivering the writ to the treasurer of the Central Vermont Railroad Company in that State which was indebted to the defendant. Upon a return made to the Justice's Court to that effect the action was adjourned, and the defendant in that action not appearing on the date to which it was adjourned, upon the appearance of the plaintiff therein and of the railroad company, judgment was rendered against said defendant and against the railroad company, the debtor of the defendant, for the amount of the claim.

In an action, brought in the State of New York by the person, the defendant in the action in the Justice's Court of Vermont, against whom the judgment was recovered in that court, the foregoing facts appeared, and it was further proved that he had had no notice of the proceedings taken before the Vermont court.

*Held,* that the proceedings before the Vermont court constituted no defense to the the Central Vermont Railroad Company, against the claim asserted in the action in the State of New York, for the amount paid by said railroad company under the Vermont judgment.

That the proceedings in the Vermont court were in violation of the provisions of the Constitution of the United States, providing that no State shall "deprive any person of life, liberty or property without due process of law."

That the attachment of the property in this case was only one step, in the due process of law contemplated by the Constitution, and that notice of some kind, to the owner, of the proceedings was another and equally important step.

That while this notice to the owner need not be personal, where he is not within the State in which the proceeding is taken, yet it must be a notice of some kind "adapted to the nature of the case."

That the provisions of the Constitution that full credit shall be given in each State to the judicial proceedings of every other State, has no application where a judicial proceeding is shown to have been without jurisdiction because of its violation of another provision of the Constitution.

*Towle* v. *Wilson and Delaware and Hudson Canal Company* (57 Vt., 622) commented upon by LANDON, J.

It further appeared that the claim which was attached in the Vermont court consisted of wages due from the railroad company to the plaintiff, necessary for the support of himself and family, and that the plaintiff was a resident of the State of New York.

*Semble,* that such claim was not subject to attachment in the Vermont court.

APPEAL by the plaintiff from a judgment entered on the verdict of a jury by direction of the court, at the Franklin County Circuit, March 22, 1888, and from an order of the court denying the plaintiff's motion for a new trial on the minutes.

The Central Vermont Railroad Company is a corporation organized under the laws of Vermont, having its office and principal place of business at St. Albans, Vt.

This action was commenced December 17, 1887.

The complaint alleges that the defendant is a corporation organized under the laws of Vermont; that about the 1st day of September, 1887, defendant, in this State, hired plaintiff to do work in this State; that between September 29 and December 1, 1887, plaintiff did work in this State for defendant under that hiring, for which defendant owes plaintiff sixty-seven dollars and ninety cents.

The answer does not deny the complaint, but avers a partial payment of thirty-two dollars and ninety-seven cents, under the circumstances hereafter stated.

On the trial it appeared that plaintiff had previously been paid one month's wages in this State, and that on the 2d of November, 1887, the defendant was owing him forty-five dollars and fifty cents.

The partial payment is claimed to have been made as follows: On the 2d day of November, 1887, one John Kelly, of this State, commenced an action in a Justice's Court of the State of Vermont against this plaintiff on the common counts of assumpsit. In that action an attachment was issued directing the officer to attach the goods of this plaintiff, Martin, and to notify Martin to appear the twenty-first of November. The officer returned that Martin was not in that State and had no known agent or attorney, and that he had served the writ by delivering it to the treasurer of the Central Vermont Railroad Company, and that that company had admitted service of the writ by indorsement, dated November 2d, 1887, and signed by their paymaster.

Accordingly, as it appeared to the justice that the said Martin was out of the State, the action was adjourned to November 23, 1887, at which day the defendant, Martin, did not appear, but the plaintiff, Kelly, did appear, and the said Central Vermont Railroad Company did appear by the same attorney who appeared for Kelly, and "made disclosures." Thereupon judgment was rendered for Kelly against Martin for twenty-nine dollars and fourteen cents and for three dollars and eighty-three cents costs; total, thirty-two dollars and ninety-seven cents, and against ·said company for the same amount. That amount was paid by the company to the said attorneys of Kelly, November 23, 1887.

It was proved, on the part of the plaintiff, on the trial of the present action, that on the 2d day of November the wages he had earned and which were due to him from the defendant were necessary for the support of his family, and that the wages earned after that date were also necessary for the support of himself and his family; that he was a resident and voter in this State, and that he had no notice of the proceedings in Vermont. He offered to prove that at the time of the commencement of the action in Vermont, by Kelly ,he was not indebted to Kelly in any amount. This was excluded and exception taken, the court remarking that Martin could sue Kelly and recover back the money by showing that the amount was not due, and that the Vermont judgment would not be a bar.

The court directed a judgment for the balance, thirty-five dollars and sixty-three cents, allowing the partial payment, and the plaintiff appeals.

*Kellas & Munsill*, for the appellant.

*Louis Hasbrouck*, for the respondent.

LEARNED, P. J.:

The fourteenth amendment of the Constitution of the United States (§ 1) says: "Nor shall any State deprive any person of life, liberty or property without due process of law." What constitutes due process·of law is a question that has been frequently discussed. It "requires an orderly proceeding, adapted to the nature of the case, in which the citizen has an opportunity to be heard, and to defend, enforce and protect his rights. A hearing or an opportunity

to be heard is absolutely essential. We cannot conceive of due process of law without this." (*Stuart* v. *Palmer*, 74 N. Y., 184; *Chicago Life Ins. Co.* v. *Needles*, 113 U. S., 576; *Ferguson* v. *Crawford*, 70 N. Y., 256; *Starbuck* v. *Murray*, 5 Wend., 157.) In *Davidson* v. *New Orleans* (96 U. S., 105) in describing due process of the law the court says, "due advertisement made as to those (owners) who were unknown or could not be found." It seems hardly necessary to argue that a judgment which deprives a man of his property cannot lawfully be recovered without notice to him. We do not mean that against absent debtors the law may not authorize an attachment of the alleged debtor's property. It may thereby acquire jurisdiction of the thing; but in order to make that jurisdiction perfect it must give due notice to the owner before it attempts to divest his title. The attachment of the property is only one step; another and equally important step is the notice to the owner. (Cooley on Constitutional Limitation, 403; *Buchanan* v. *Rucker*, 9 East, 192; *Fenton* v. *Garlick*, 8 Johns., 194.) Such is the rule in proceedings strictly *in rem*, to which what is known as foreign attachment is analogous. Now, while it is true that this notice to the owner need not be personal, as he is out of the State, yet it must be, as said in the quotation above, "adapted to the nature of the case." If it be said that it rests with the legislature of the State in which the attachment is issued to declare what shall be a sufficient notice, the answer is that that may be so, provided there is a reasonable and *bona fide* provision for giving notice. But certainly a legislature cannot enact that no notice need be given, or make that a notice which is no notice at all. To do that would be a fraud on the Constitution.

Now, in the present case, there was no notice whatever to Martin and no attempt to give him notice. Process was issued and served on the railroad company, his debtor, and on no one else. To serve a notice on a man's debtor is no notice to the man of a claim against him. The debtor is in no sense his agent. And, if there were a statute of Vermont declaring it to be unnecessary to give any notice to the alleged debtor whose property is to be taken, such a statute could not be valid against this constitutional provision. A State cannot make that due process of law which is not such. If a State can declare that service on a man's debtor is due process of law

under which his property can be taken away, then it can dispense with any service of any kind whatever. The constitutional amendment aims, among other things, to guard all the citizens of all the States from any such injustice.

Nor is this view in conflict with the other constitutional provision that full faith and credit shall be given to the judgments of other States. Where a judicial proceeding shows a want of jurisdiction, such want is not cured by this constitutional provision. And when there is no notice to the debtor whatever, we may rightfully say that his property could not be taken away. A judicial proceeding which violates the fifteenth amendment can have no faith or credit to affect the rights of parties.

If it be urged that it rests solely with the legislature of the State in which the attachment is issued to prescribe what notice shall be given, the further answer is that it does not appear that the legislature of Vermont has directed that notice to the debtor shall be given in the manner done in this action. The Revised Statutes of that State, published in 1881 (§ 1081, p. 257), provide that when the principal debtor is not a resident of the State the writ may be served on him by leaving a copy in the hands of the trustee; and "such service shall be as effectual as if made by attachment of the goods and chattels of such principal debtor found within the State." Thus the effect of such service on the trustee is specified. It is to be equivalent to an attachment of goods and chattels. Section 881, page 223, provides for the service of an attachment. Thus the levy or attachment on goods and chattels and also on debts is provided for. Section 1406, page 307, provides for a continuance of the case by the justice, unless the plaintiff satisfies him that the defendant had sufficient notice of the suit to enable him to appear. Here is a recognition of the necessity of notice before judgment can be given. Section 1402 provides for notice to an absent defendant, residing or being out of the State, by delivering to him out of the State a copy of the process and pleading and a copy of the order for such delivery; and section 1404 provides that on such delivery, twenty days before the time to appear, the same proceedings may be had, so far as to affect lands, chattels and credits, as if the defendant had been served in the State. This implies that, without such delivery, lands, chattels and credits cannot be affected.

The service of process on the trustee is said to be as effectual as an attachment of goods and chattels, but beyond that the statute provides for an order for delivery of the process and pleading out of the State, and requires such delivery to be made twenty days before the time to appear. That is the proceeding to notify the party. Had that been done in this case, there would probably have been due process of law. This is analogous to our own practice. We have an attachment of the property of a foreign debtor (Code, § 636), and then the order for the service of the summons out of the State. (Sec. 438.) No judgment could be had without the latter proceeding.

It is with hesitation that we construe the statute of another State, but it seems to us that here is a plain recognition of the principle that only by giving notice and an opportunity to be heard can any court take from a person his property. Why such notice was not given in this case, when the defendant lived in Malone, N. Y., and the suit was in St. Albans, Vt., we cannot tell, unless it was for the very purpose of preventing the defendant from asserting his defense.

Even in proceedings strictly *in rem* it is necessary, as above said, that the parties in interest have notice, " for the common justice of all nations requires that no condemnation should be pronounced before the party has an opportunity to be heard." (Story on Conflict of Laws, § 592.) It seems to us, then, that the Vermont statutes required notice to the debtor, in order that the court should have jurisdiction over the attached property, and, further, that even if it did not, such notice (not necessarily personal) was necessary under the Constitution of the United States. The attachment of the debt may have been valid, but the subsequent adjudication against Martin was without jurisdiction, and the mere attachment is not a defense in this action. (*Williams* v. *Ingersoll*, 89 N. Y., 508.)

There is another very serious question; the contract of hiring was made in this State; the work was done in this State by a citizen of this State, and it was to be paid in this State, at least there was evidence to show that it was to be paid here. The debt, therefore, was subject to the laws of this State and the plaintiff had all the rights relative thereto given by the laws of this State. One of these rights was that these earnings for his personal services, rendered within sixty days and necessary for the use of his family, should not

be taken from him by legal proceedings against him or his debtor. (Code Civil Pro., §§ 2463, 1879.) . Although these sections refer to proceedings taken in our own courts, yet they practically exempt such earnings from seizure by a creditor; and, certainly, as long as the person who has earned those moneys remains in this State he is entitled to have the benefit of this exemption. If the owner of tangible exempt property were to carry it into another State it might be no longer protected by our laws; and so, if a person to whom were due moneys for services which were exempt by our laws should go into another State, he might lose the benefit of this exemption. But Martin remained here, and his claim for earnings was protected by our laws. We see no reason why the railroad company might not, if they had chosen so to do, have insisted on this exemption as a ground why the attachment in Vermont reached nothing. Story says that the nature of the contract must be determined by the law of the country where it was entered into. (Conflict of Laws, §§ 568, 569.) In *Williams* v. *Ingersoll* (89 N. Y., 508), a debt claimed to be attached in Connecticut had previously been assigned in this State by the person against whom the attachment was issued. The court, at page 525, says he had nothing to be attached, and the attachment was a nullity; that is to say, the court held that the transaction here of the person to whom the debt was due would be regarded by our courts, and should have been regarded by the court in Connecticut. By analogy, the exemption from any claim of creditors which Martin enjoyed here will be regarded by our courts. We may believe that it would have been regarded by the Vermont court if the railroad company had asserted it, as they should have done. For they should have known, and are chargeable with knowledge of, the law of the State where their contract with Martin was made and where it was to be performed. In fact, it appears by the case that the attorneys for Kelly in the Justice's Court were also attorneys for the railroad company; and it is easy, therefore, to understand why they did not assert this defense.

It is difficult to have justice done when the same attorneys appear for both parties in the litigation, and thus enable both parties to combine to take property from a third person who has not notice of

the proceeding. Let us suppose that before the proceedings in Vermont, Martin had assigned the claim to some third person, and that the railroad company had had notice of the assignment, would the proceedings in Vermont have deprived that third person of his claim? We suppose not under the case last cited. (Story on Conflict of Laws, 592, and note 2.) And when our laws impose on a debt of this kind an exemption for the claim of any creditor, which exemption is known to the party who owes the debt, that exemption must be as effectual as an assignment would be to make an attachment in another State a nullity. As was said in *Osgood* v. *Maguire* (61 N. Y., 529) it would be carrying the rule of comity to an absurd length for our courts to give foreign creditors a better position in this respect than they do domestic creditors.

The judgment should be reversed, a new trial granted, costs to abide the event.

INGALLS, J., concurred.

LANDON, J.:

*Gray* v. *Delaware and Hudson Canal Company* (5 Abb. N. C., 131), was in every respect like the present case, except that the Delaware and Hudson Canal Company was a New York corporation doing business in Vermont as well as in this State, and having, as required by the Vermont law, an agent in that State upon whom legal process could be there served, whereas this defendant is a Vermont corporation doing business in this State as well as in Vermont, and having agents here upon whom legal process can be served. This distinction, however, is not material.

In the case cited, full faith and credit were given to the judgment of the Vermont Justice's Court. Assuming that the Justice's Court of Vermont had made the proper service of its process so as to acquire jurisdiction of the *rem* against the New York owner of it, it followed then, as it follows now, that the courts of this State must give the same faith and credit, that is, the same effect to the Vermont judgment that the courts of that State would give it.

But it appears that the case of *Towle* v. *Wilder and Delaware and Hudson Canal Compang* (reported in 57 Vt., 622), came before the Supreme Court of that State in 1878 upon appeal by the Delaware and Hudson Canal Company in a case precisely like Gray's

case, cited above, except that the New York creditor of the company appeared in the Justice's Court on the return day of the writ. The Supreme Court reversed the judgment of the court below; no opinion is reported. The report states: "This case is published in this volume (eight years after the decision), as it appears that similar suits are being brought. It was sent to the reporter by ROYCE, Ch. J., on the request of VEAZY, J." We thus have the opinion of the highest court of Vermont that such judgments upon trustee process rendered in the inferior courts of that State in favor of New York creditors, who have no cause or excuse to leave their own forum, except the single one that the Vermont laws give a right and remedy to creditors which the New York laws do not, will be reversed if appealed by the party charged as a trustee. This defendant, therefore, did not pay the judgment in Vermont because it could not escape payment, but because it did not choose to resort to the means open to it to escape it.

In this case the subject-matter and the parties were all within this State, and it was fitting that their rights should be adjudged by our courts under our laws. One of the parties went to Vermont and procured from an inferior court a judgment against the others, which apparently gave him a right unknown to our laws. We have every reason to believe that the highest court of that State would, upon appeal, declare the judgment unauthorized. In such a case we do not think we are required, to the prejudice of our citizens under our laws, to give any effect to the Vermont judgment.

Concurring with the presiding justice, except that no opinion is expressed respecting the requirements of the Vermont statutes as to service of trustee process upon non-residents of that State, I advise a reversal.

Judgment reversed; new trial granted; costs to abide event.