STATE, by and through STATE LAND BOARD, v. BLAKE et al. (MILLARD REALTY CO., CORPORATION, Intervener).

No. 5133.   Decided April 29, 1936.   (56 P. [2d] 1347.

*Joseph Chez*, Atty. Gen., and *Wm. A. Hilton*, of Salt Lake City, for plaintiff.

*Tangren & Crafts*, of Delta, for defendants.

*Soule & Spalding*, of Salt Lake City, for intervener.

ELIAS HANSEN, Chief Justice.

In this cause an alternative writ of mandate was issued commanding the defendants to execute and deliver releases and discharges of liens on fourteen tracts of land situated in

Millard county, drainage district No. 3, Millard county, Utah, or to show cause why such releases and discharges should not be so executed and delivered. The liens were for bonded indebtedness and equalized assessments of benefits and taxes upon lands owned by the plaintiffs. After the writ was issued the Millard County Realty Corporation asked for and was granted leave to intervene. It filed a complaint in intervention. Upon the pleadings so filed the cause was argued and submitted and an opinion rendered. *State* v. *Blake*, 88 Utah 584, 20 P. (2d) 871. The intervener applied for and was granted a rehearing. One of the grounds urged for rehearing was that we had misconstrued the pleadings and misconceived the facts. In the former opinion it was assumed that the total amount of the original equalized assessed benefits on the various tracts of land had been paid by the plaintiff; that of the amounts so paid $10 on each tract of land was in cash and the remainder in outstanding bonds and matured interest coupons of the district. At the time of the oral argument on the rehearing the parties were unable to agree as to whether or not the total amount of the original equalized assessed benefits had or had not been paid with bonds and cash. Counsel for plaintiff claimed that such total amount had been paid. Counsel for the intervener contended to the contrary. This court requested that counsel either stipulate as to the facts in such respect or furnish proof thereof. Counsel were apparently unable to stipulate as to the facts, but they have furnished certified copies of the record with respect to the facts. From such record the following facts are established: At the time the state land board of Utah delivered bonds and matured interest coupons to the treasurer of Millard county, Utah, and demanded that the supervisors of Millard county drainage district No. 3 execute and deliver to the land board releases and discharges of the several liens on the fourteen tracts of land owned by the land board, the total amount of unpaid equalized assessment of benefits which had not assumed the status of taxes or assessments theretofore levied against

such lands amounted to the total sum of $48,671.60, which was the amount at par of bonds and matured interest coupons delivered by the land board to the treasurer of Millard county, Utah. There were unpaid drainage taxes which had been levied against such lands in the total sum of $12,240.60. Interest at 12 per cent. had accrued on the unpaid taxes in the sum of $3,628.46. Because the drainage taxes had not been paid when due penalties in the sum of $366.22 had also accrued. In payment of the unpaid taxes, together with the interest and penalties thereon, the land board paid to the treasurer the sum of $10 in cash on each tract of land, or a total sum of $140 for the fourteen tracts involved in this controversy. It will thus be seen that in the former opinion we misconceived the facts and that we were probably in error in construing the pleadings to mean that the total amount of the original equalized assessments of benefits were paid by the land board. The facts are that the bonds merely paid the amount of equalized assessment of benefits which had not theretofore, by various levies, assumed the status of taxes. The land board is thus in the position of attempting to secure the release of unpaid taxes together with interest thereon and penalties in the total sum of $16,235.28, by the payment of $140. May this be done? We now conceive that is the question which was not properly disposed of in the former opinion, and which must now be decided.

In 1929 the Legislature of Utah passed two acts affecting the payment of drainage taxes. Chapter 32 provides that equalized drainage district benefit assessments and taxes may be paid in lawful money of the United States, with bonds or matured interest coupons of the district at the face or par value of the same, provided (section 2) that, "all assessments or taxes other than those levied for payment of bond, interest or principal shall be payable only in lawful money of the United States, or in warrants of the district issued within the same calendar year in which the warrants are tendered." In that chapter it is made the duty

of the county treasurer to accept such payments, and when payment is so made, the drainage district is directed to issue a release discharging the lands from further liability for the payment of assessments other than for supervision and maintenance.

Chapter 33 provides that any person interested in lands sold to the drainage district for taxes and assessments may redeem the same by paying the amount of such taxes and assessments, together with interest, costs, and penalties "unless in the judgment of the board of supervisors of the drainage district and the board of county commissioners of the county wherein the land is situated, the interest of the drainage district will be best sub-served by accepting a lesser sum in which case such lesser sum, to be fixed by such board of county commissioners, shall be accepted." Section 2. By virtue of the provisions of chapter 33, Laws of Utah 1929, just quoted, and in pursuance of actions taken thereunder by the board of supervisors of Millard county drainage district No. 3, and of the board of county commissioners of Millard county, Utah, it is claimed by the state land board that it is entitled to the execution and delivery of the releases discharging its lands from further liability for the payment of the bonded indebtedness of the district, notwithstanding only a small part of the unpaid taxes, interest, costs, and penalties were paid by it to the treasurer of Millard county. It is now made to appear that on February 8, 1930, by unanimous vote of the board of supervisors of Millard county drainage district No. 3 the following resolution was passed:

"Whereas, many land owners in Millard County Drainage District No. 3, in Millard County, Utah, have paid the total equalized drainage benefits assessed against their respective tracts of land and hold receipts from the County Treasurer of Millard County, Utah, showing payment and,

"Whereas, the holders of the outstanding bonds of the Drainage District have joined in such request and desire the cancellation of such drainage taxes.

"Now therefore be it resolved, that upon presentation by any land owner in Millard County Drainage District No. 3, or by his agent,

trustee or other representative, of a receipt from the County Treas-
urer of Millard County, Utah, showing payment in full of the total
equalized drainage benefits assessed against such land, to the Board
of County Commissioners of Millard County, with a request from such
landowner in the manner aforesaid for the cancellation of the due
and or delinquent drainage district taxes against such land, which
said request for cancellation is also requested by a representative of
the holders of the outstanding bonds of the drainage district, we the
Board of Supervisors of said Drainage District join in such request
for cancellation of any such drainage taxes, together with all penal-
ties and interest and recommend such cancellation to said Board of
County Commissioners; upon the payment of the sum of ten dollars
for each tract of land. A copy of this resolution to be certified by
the President or the Secretary of said Drainage District and be forth-
with presented to and filed with the Clerk of said Board of County
Commissioners for the convenience and use of said Board of County
Commissioners in acting upon such applications for cancellation of
drainage taxes."

It will be noted that in the foregoing resolution the ex-
pression "total equalized drainage benefits assessed against
such lands" is used. It was a similar expression in plaintiff's
petition for a writ that caused us to misconceive the facts
when the original opinion was written. As already indi-
cated in this opinion, we construed such expression to mean
the total equalized drainage benefits originally assessed
against the land. It now appears that the language was
intended to mean only the total equalized drainage benefit
assessments that remained after deducting from the original
assessed benefits such portions thereof as had, by reason
of levies made from time to time, assumed the status of
taxes. It is now made to appear from the affidavit of Mr.
Oppenheimer, which affidavit will presently be quoted in
this opinion, that the expression "total equalized drainage
benefits assessed" does not mean the total of the original
assessed benefits but was intended, and by the parties in-
terested construed to mean only such portions of the original
assessed benefits as had not, by levies made, assumed the
form of taxes.

It is also made to appear that the board of county commissioners of Millard county, Utah, approved the issuance of the releases to the state land board discharging its lands from all future liabilities for the payment of the bonded indebtedness of the district, upon the payment of the bonds and matured interest coupons of the district, and the moneys which were paid by the land board to the treasurer of Millard county, Utah. It is further made to appear that numerous other tracts of land within the drainage district have been released and discharged from all further liability for the payment of the bonded indebtedness of the district by the payment of the district's bonds and interest coupons at par upon the same condition as the land board seeks the release of its lands; that is to say, by the payment of bonds and interest coupons equal to the amount of equalized assessed benefits, other than such assessed benefits as have assumed the form of taxes, together with $10 on each tract of land as and for full payment of all delinquent taxes, costs, and penalties. Many of such releases have been issued at the request of the intervener, Millard County Realty Company.

An affidavit has been filed by W. J. Oppenheimer who is, and at all times involving this controversy was, a supervisor and the secretary of the board of supervisors of Millard county drainage district No. 3. The facts stated in that affidavit are not disputed. In such affidavit, Mr. Oppenheimer avers:

"That in making a settlement of the drainage lien upon his lands with the Bondholders' Committee the landowner should pay only what he thought his land was worth regardless of the amount of assessed benefits, taxes, interest and penalties standing against his land. In each instance where a settlement was made or desired to be made, it was required that the Bondholders' Committee clear the land of all drainage indebtedness. Had not the order been made it would have been necessary for the Bondholders' Committee to deliver up bonds in payment of the delinquent taxes, interest, penalties and costs as well as payment of the assessed benefits in like manner. In many instances this procedure would have required the Bondholders' Committee to deliver up nearly twice as many bonds in settlement of the

drainage indebtedness against a given tract of land as if the order had not been made. And in each instance the landowner paid only a given amount in cash to the Bondholders' Committee regardless of the amount in bonds that the Committee had to deliver up to clear the land of the indebtedness. In each instance after the order was made the Bondholders' Committee received in cash from the landowner exactly the same amount where it paid in bonds only the assessed benefits against the land as it would have received had it been required to deliver up additional bonds to pay also the delinquent taxes, interest, penalties and costs. In each instance where a settlement was made between the Bondholders' Committee and the landowner. after the order was made the Bondholders' Committee was permitted to retain its bonds to the extent that the delinquent taxes, penalties and costs were cancelled.

"Had the order not been made it would have been necessary for the Bondholders to deliver to the District all of the bonds in order to clear not more than half of all the lands within the District for the Drainage indebtedness. The other half of the lands would have been freed from this indebtedness without the payment of anything since all of the bonds would have been exhausted in clearing approximately one half of the lands from the indebtedness. Under the present order the Bondholders' Committee is permitted to retain in its possession the bonds that it would otherwise have had to deliver to the District in payment of drainage taxes, interest, penalties and costs, and is thus able to compel landowners upon other tracts of ground to make a settlement with them upon lands which otherwise would have automatically been freed from the bond lien."

The affidavit from which we have quoted at length indicates some of the difficulties which confronted the liquidation of the bonded indebtedness of the district and explains why the supervisors of the district and the county commissioners deemed it for the best interests of the district to adopt the plan which was adopted. It thus appears that the procedure followed with respect to the releases and discharges from bonded indebtedness of the lands here brought in question was strictly in accordance with the provisions of chapters 32 and 33, Laws of Utah 1929. If those acts are valid, there is no escape from the conclusion that the state land board is entitled to the releases prayed for. None of the parties to this proceeding question the constitutionality of those acts. At the oral argument on the rehearing

counsel for interveners disclaim any and all intention of questioning their constitutionality. It may be that intervener is precluded from making such an attack because of having accepted benefits under those acts. Be that as it may, we do not express any opinion as to the constitutionality of chapters 32 and 33, Laws of Utah 1929, or any part thereof, nor do we express any opinion as to whether or not such an attack is available to the intervener or other parties to this controversy. Assuming, as we do, that the acts under which the board of supervisors of Millard county drainage district No. 3 and the county commissioners of Millard county, Utah, are valid and subsisting, plaintiff is entitled to the relief prayed.

The opinion heretofore rendered in this cause should stand except as herein indicated. The order made in the former opinion shall remain the order in this cause.

FOLLAND, EPHRAIM HANSON, MOFFAT, and WOLFE, JJ., concur.