## UPPER BLUE BENCH IRR. DIST. v. CONTINENTAL NAT. BANK & TRUST CO.

No. 5878.   Decided October 25, 1937.   (72 P. [2d] 1048.)

326

L. A. *Hollenbeck*, of Duchesne, and *Jesse R. S. Budge*, of Salt Lake City, for appellant.

*Fabian & Clendenin*, of Salt Lake City, for respondent.

HANSON, Justice.

This is an action brought by the plaintiff hereinafter referred to as the district, to recover funds which it had deposited in a checking account with the defendant, hereinafter referred to as the bank. The questions that divide the parties are matters of law growing out of the affirmative defense relied upon by the bank to defeat the district's action. The evidence shows the following facts: Plaintiff is an irrigation district organized and existing under our laws and contained wholly within Duchesne county. It has not as yet constructed any irrigation works. Its activities so far engaged in have consisted chiefly in making and protecting certain water filings in contemplation of the construction of irrigation works at some future time. No bonds have been issued and no assessments have ever been made or taxes collected for the benefit of the district. What money it has required and used has been raised by other means not exactly disclosed, except that the funds sought to be recovered in this action were obtained by borrowing the same from a private individual. The district borrowed $250 in December, 1933, and $75 in November, 1934, and deposited the money so obtained with the defendant. The money so borrowed and deposited, together with a balance previously on deposit, after deducting withdrawals, amounted to $338.71 on June 1, 1935. No checks were drawn against this amount until October 14, 1935, when a check was drawn by the district treasurer in favor of the district's attorney in payment of a warrant issued by the district for services and expenses incurred in connection with obtaining an extension of time to submit final proof or its water filings. This check was dishonored by the bank because it had already paid over to the sheriff of Salt Lake county the whole of said sum of $338.71, being all of the district's money on deposit with the bank. It appears that on August 28, 1928, a money judgment was rendered in the district court of Duchesne county against the district in favor of E. S. Hallock. An abstract of said judgment was filed in the district court of Salt Lake county.

On June 26, 1935, an execution, issued out of the last-named court upon said judgment, was served by the sheriff of Salt Lake county upon the bank. A writ of garnishment, issued by the same court, in aid of the execution was also served on the same date. On June 27, 1935, the bank sent to the district, by mail, a notice of such execution and garnishment proceedings; the notice being mailed to Duchesne, Utah, the address of the district appearing upon the ledger account of the district with the bank. The envelope containing the notice shows it was received at the Duchesne post office on June 27, 1935. It was not delivered to nor received by the district, but was returned to the bank about July 3, 1935. Nothing further was done by the bank to notify the district of the process served upon the bank. On July 3, 1935, the bank filed with the court its answer to the writ of garnishment, showing the following:

"We have an account in the name of the defendant The Upper Blue Bench Irrigation District with a balance to the credit of the same of Three Hundred Thirty Eight Dollars and seventy one cents ($338.71)."

A garnishee judgment was rendered July 9, 1935, against the bank for the said sum of $338.71. That same day execution on said garnishee judgment was served upon the bank and the money was paid over to the sheriff by the bank. The district had no knowledge that its funds had been so seized and paid over until in October, 1935, when the check to its attorney above referred to was dishonored. The bank then advised the attorney by letter of the seizure of the funds by the process above described. Thereafter, the district made written demand upon the bank that it pay over to the district's treasurer the said sum of $338.71. Upon the bank's refusal to comply with the demand this action was brought. The trial court rendered judgment against the district dismissing its complaint, concluding as a matter of law that the bank in paying the money on deposit over to the sheriff did so under a valid levy made pursuant to a valid unsatisfied

judgment, and acted pursuant to a valid and legal garnishee judgment rendered against it.

The district, in appealing from the judgment of the trial court, maintains, first, that the money on deposit with the bank was not subject to execution and the bank was not justified, so far as its liability to the district is concerned, in paying it over to the sheriff in response to the execution; and, second, the bank did not perform the duty owing by it to the district to notify the district of the garnishment and to protect the district by making proper disclosures and averments of the district's claim in its answer to the writ of garnishment. By virtue of section 88-1-2, R. S. Utah 1933, Chapter 68, Laws of Utah 1919, relating to irrigation districts, as subsequently amended in the succeeding sessions of the Legislature, has been carried over and given effect though not contained in the volume of the Revised Statutes. Neither in the Revised Statutes, nor in said chapter 68, 1919 Laws, is there a provision specifically exempting from execution the property of an irrigation district, such as exists in favor of counties, cities, towns, and school districts by virtue of section 104-37-13 (subparagraph 10). We must look to the law under which irrigation districts may be created and maintained and to the general principles of the law to settle the question of the right of such districts to be exempt from execution.

It is clear from a reading of chapter 68, 1919 Laws, that the purpose to be effected in the creation of an irrigation district is public rather than private. The district is given certain powers to be exercised in behalf of the public within its territorial limits. It is given power to levy and collect taxes for its organization, for the construction of its works and for its maintenance. Under Section 54, 1919 Laws, such district is declared to be a body politic and corporate, and its bonds and other securities are declared to be exempt from taxation within this state. It has been described by this court in the case of *Bonneville Irriga-*

*tion Dist.* v. *Ririe,* 57 Utah 306, 195 P. 204, as a "quasi public corporation." It is not necessary to a decision in this case to attempt a more definite description or designation. Being public in its purpose and nature, its rights and duties are to be determined, generally speaking, by the same considerations which determine the rights and duties inhering in what are commonly known as municipal or public bodies.

"Unless allowed by statute, courts generally hold that no execution can be issued against a municipality." 6 McQuillin, Municipal Corpns. (2d Ed.) § 2664, p. 719. In *State* v. *Blake,* 88 Utah 584, 20 P. (2d) 871, on rehearing 88 Utah 600, 56 P. (2d) 1347, this court held that taxes levied for the construction and repair of the drainage system and for management and supervision of a drainage district were exempt from execution upon the ground that to allow a judgment creditor to seize such property would prevent the district from performing its functions. The bank argues that the language of the decision just cited draws a distinction between property "necessary for the performance of the governmental functions of the district" and property held or acquired for other purposes, so as to make the first class of property exempt from execution, but not the second class. We do not think the decision is susceptible of such an interpretation. In this connection, we refer to the case of *Utah Oil Refining Co.* v. *Millard County Drainage Dist. No. 4,* 90 Utah 67, 50 P. (2d) 774, 780, in which were considered the rights and remedies of certain bondholders of a drainage district as against the lands within and property of the drainage district. On this subject the court says:

"In this case the bondholders are really not true lienholders of the land in the district. They only have a right to compel assessment and collection of the tax against such landowners. On the other hand, they are not general creditors of the district. See *State ex rel. Malott* v. *Board of County Com'rs of Cascade County,* 89 Mont. 37, 296 P. 1. They are really creditors who have no right to come against any land directly to satisfy their debts nor can they by a general judg-

ment against the district execute against any of the lands in the district, except perhaps such lands which the district may perchance hold which are not derived from tax sales or not held in lieu of the fund for the benefit of bondholders. They have a debt which is payable only out of taxes to be assessed against the lands in the district. It is quite doubtful whether, if they obtained a judgment against the district, they can execute against property which the district holds for the benefit of all the bondholders. Their remedy may be only to come into equity to have such property administered for the benefit of all the bondholders if the district fails to so administer them. A group of bondholders under a corporate bond issue would have the right to require the trustee who holds property for them to administer or apply it to the total bond indebtedness. A small group of such bondholders could not for themselves, if they obtained a judgment against such trustee, execute against property in his hands for the benefit of all bondholders to the satisfaction of their judgment alone."

Furthermore, the irrigation district law contains certain provisions not contained in the drainage district law which indicate that the property of the district may not be taken by execution at the suit of a judgment creditor.

Section 12, c. 68, 1919 Laws, contains the following language:

"The title to all property acquired under the provisions of this Act shall immediately and by operation of law, vest in such irrigation district, in its corporate name, and is hereby dedicated and set apart for the uses and purposes set forth in this Act."

By virtue of the express language of this section, all property of the district is impressed with a public trust which would prevent it from being taken or used except for the accomplishment of the uses and purposes intended by the act as a whole.

It would seem that such language alone would be sufficient to deny a creditor the right to seize and take by execution any property of the district and apply the same to his purposes. The act, however, goes further and provides the

manner in which claims against the district are to be paid. The county treasurer of the county wherein the district is located is ex officio treasurer of the district. He "shall collect, receive and receipt for all moneys belonging to said district." He is required to keep a bond fund account, consisting of moneys received on account of principal and interest of bonds issued by the district, and a general fund account consisting of all other moneys received by the collection of taxes or otherwise.

"The district treasurer shall pay out of said general fund only upon the order of the district, signed by the president and countersigned by the secretary of said district as herein provided." Section 20, Laws 1919, c. 68.

This section was amended in 1929, but the above provisions were retained. See chapter 68, p. 90, and chapter 80, p. 145, 1929 Session Laws. Section 23 provides that: "No claim shall be paid by the district treasurer until the same shall have been allowed by the Board [of directors] and then only upon warrants signed by the president, and countersigned by the secretary." All claims are to be verified and all warrants shall be drawn payable to the claimant or bearer in the same manner as county warrants. Under Section 26, amended by chapter 73, 1921 Session Laws, the district is empowered to incur indebtedness for the conduct of its business until bonds are sold or taxes received, and to give notes therefor.

Sections 20 and 23 clearly manifest an intent to vest in the district officers the management and control of the district's finances and forbid a disbursement of district funds except upon order of the board of directors. Such provisions are inconsistent with the right of a creditor to levy upon and seize such funds. *Capps v. Citizens' Nat. Bank* (Tex. Civ. App.) 134 S. W. 808, 809. To recognize the right in one creditor to take by garnishment funds of the district in disregard of the statutory provisions above referred to would be to recognize such right in all creditors of the district. The

exercise of such rights would destroy the supervision and control over the funds of the district vested by the statutes above referred to in the board of directors, and could very well dissipate the funds of the district obtained to carry on its purposes to the extent where the district could no longer function. Such a result is wholly repugnant to the spirit and purpose of the act. It follows that the funds in the hands of the bank were not subject to being taken by execution or garnishment.

The following cases, while not involving statutory provisions identical with ours, hold that funds of a public or quasi municipal corporation are not subject to being taken by execution of garnishment. *Waterman-Waterbury Co.* v. *School Dist. No. 4,* 183 Mich. 168, 150 N. W. 104; *Eastern Union Co.* v. *Moffat Tunnel Improvement Dist.,* 6 W. W. Harr. (36 Del.) 488, 178 A. 864; *Farrow* v. *Eldred Drainage and Levee Dist.,* 359 Ill. 347, 194 N. E. 515; *Vanderpoel* v. *Borough of Mt. Ephraim,* 111 N. J. L. 423, 168 A. 575, 89 A. L. R. 862; *Snower* v. *Hope Drainage Dist.* (D. C.) 2 F. Supp. 931; *San Francisco Sav. Union* v. *Reclamation Dist. No. 124,* 144 Cal. 639, 79 P. 374. In the cases of *Vanderpoel* v. *Borough of Mt. Ephraim* and *Snower* v. *Hope Drainage Dist.,* supra, it was held that bondholders could not reach by execution or garnishment funds collected in a sinking fund for the retirement of the bonds of the municipal corporation.

This court in the case of *Emery County* v. *Burresen,* 14 Utah 328, 47 P. 91, 37 L. R. A. 732, 60 Am. St. Rep. 898, decided that an execution could not be levied against property of a county to enforce a judgment. The judgment amounted merely to an audit of the claim and stands upon the same footing as any other approved claim. The court there adverts to the serious consequences hereinabove referred to which would result from levying upon and selling the county's property.

Notwithstanding the funds held by the bank were not subject under the law to seizure by execution or garnishment,

the district court nevertheless entered a garnishee judgment against the bank, and the latter paid that judgment and now uses such payment as a shield against the district's claim here involved. Whether the garnishment proceedings and payment thereunder constitute a defense to the district's action depends upon whether such proceedings were void or were merely erroneous or voidable. If the judgment in the garnishment proceedings is void, it furnishes no defense to a subsequent action by the creditor against the garnishee. Where the judgment against the garnishee is merely erroneous or irregular, but not void, payment by the garnishee in pursuance of such judgment protects him against the subsequent claim of his creditor. 49 A. L. R. 1411, note; 2 Shinn, Attachment and Garnishment, p. 1152, § 708; 28 C. J. p. 398; 2 Black on Judgments, § 593.

We are confronted, therefore, with the question: Is the garnishee judgment against the bank void? The district court is a court of general jurisdiction. In the case before us it had jurisdiction of the garnishee bank since the latter filed its answer and thereby entered its appearance, even if it be assumed that the writ served on the bank was impotent to require an answer. It was not necessary, so far as the court's jurisdiction was concerned, that the district be served with any process. The court had before it a subsisting valid judgment against the district. The debt owing from the bank to the district by reason of the funds on deposit was one over which the general powers of the court extended. Jurisdiction over the subject-matter exists "in any case in which it appears that the matter in litigation is one over which the general power of the court extends and that power was regularly called into action by some application or act of the parties concerned." 1 Freeman on Judgments, p. 676. Obviously, however, a court cannot proceed to enter a judgment simply because a party requests it or files some paper in which it merely answers certain questions, even though the subject-matter is such that the

court would have the capacity, if its action were properly invoked, to act upon it. The proposition is stated in 1 Freeman § 338, as follows:

"But it is not enough that the court's power may be found broad enough in the abstract to cover the class of litigation to which the case in question belongs. Mere possession of power to act in respect to a specific subject matter is of no consequence unless that power is properly invoked. For jurisdiction of the subject matter of a particular case is something more than the constitutional or statutory power to entertain cases of the general class to which the one in hand belongs; it is that power called into activity, not by the court of its own motion for that would ordinarily be insufficient, but by some act of the suitor concerned and in some mode recognized by law * * * An entire failure to invoke the court's jurisdiction over the subject matter or an attempt to do so in a manner wholly inadequate to bring the court's powers into activity would prevent any valid determination of the case."

In the present case, had no writ of garnishment been issued or served, the court would have been without any jurisdiction to enter a garnishee judgment against the bank. It appears equally obvious that had the bank answered the writ that was served that it was in nowise indebted to the district no valid garnishee judgment could have been rendered against it, in the absence of further proceedings successfully traversing such answer. Likewise, had the bank's answer disclosed that the money it held had been duly transferred some time before the service of the writ to a named third party, no valid garnishee judgment could have been entered against it. The garnishee is merely a stakeholder, having no liability to the garnishor until a valid judgment is entered against him. The right and power of the court to enter a garnishee judgment, therefore, is predicated upon prior valid proceedings disclosing that the conditions are such that this remedy has been so proceeded with that the court's jurisdiction to consummate such proceedings with a judgment against the garnishee is invoked.

The property against which the execution and garnishment were issued in the instant case was not subject to being taken or impounded by such process. It was by law fully and completely exempt. In addition, the judgment debt was one which could not be enforced by execution. There was, therefore, no basis for the issuance of the writ of execution or the writ of garnishment in aid thereof. No property in law could be or was seized by the writ served upon the bank. The situation was the same as if no writ had issued in the first place because the judgment could not be enforced by execution and no property was in law seized or held by the writ that was served. That writ, since it was not capable of enforcing the judgment or of seizing anything, could have no effect to invoke the jurisdiction of the court to proceed and enter a judgment based upon such writ. The writ itself being impotent as being without legal force or sanction and ineffective as any kind of process to act upon any property, the entire proceeding based thereon necessarily partook of the same impotence and ineffectiveness. The exemption of the funds from garnishment would be as effective to make the garnishment without legal effect as a prior assignment or transfer of the funds would have been. *Martin* v. *Central Vermont R. Co.*, 50 Hun. 347, 3 N. W. S. 82. In the case of *Payson Exchange Savings Bank* v. *Tietjen*, 63 Utah 321, 225 P. 598, this court held that an execution levied upon premises constituting the homestead of the judgment debtor was absolutely void, not merely voidable. The court concludes that because a judgment cannot become a lien upon the homestead and an execution levied thereon is void, an order of sale by the court is equally impotent. It would likewise follow that if a writ of garnishment is impotent to seize any property, either because it cannot be used in a particular case for that purpose or because there was no property which could be affected by it, a judgment based thereon would be a nullity.

In the case of *Toth* v. *Toth*, 242 Mich. 23, 217 N. W. 913, 56 A. L. R. 839, the court came to the conclusion that a decree

for alimony to be paid in monthly installments is not such a judgment or decree for money for the enforcement of which garnishment process could be used, and held that garnishment proceedings on such a judgment were void and open to collateral attack. By citing this case we do not wish to be understood as approving the view that garnishment cannot issue in this state on a decree for monthly installments of alimony. On that point we, of course, express no opinion. But, granting such view is correct, the case is authority to support the conclusion that the garnishment proceedings in the instant case are void as not being founded upon a judgment to enforce which execution or garnishment is permitted by law.

In the case of the *McCord & Nave Mercantile Co.* v. *Bettles*, 58 Mo. App. 384, garnishment was served upon one who held property as security under a chattel mortgage. No foreclosure had taken place at the time the garnishment was served, so that it could not then be ascertained whether any surplus would remain after satisfying the chattel mortgage. It was held that nothing was seized by virtue of the garnishment so as to keep the garnishment alive until the property was sold and a surplus obtained. The court says:

"If the jurisdiction is exercised without any legal foundation being laid for it the whole proceeding is void and no property or credits of the defendant can be alienated through it and if the garnishee without interposing this defense voluntarily submit to judgment for the amount in his hands and subsequent payment thereof will not have the effect to discharge the debt as to the defendant who has a right to have his property taken from him conformably to law. * * * It was the duty and the right of the garnishee to make the defense of want of jurisdiction in the court."

The following cases, while not involving the precise elements present in the case at bar which render the garnishment proceeding void, nevertheless illustrate the principle involved, and in our opinion tend to support the view which we take. *Drake* v. *De Silva*, 124 App. Div. 95, 108 N. Y. S. 1039; *Stimpson* v. *Malden*, 109 Mass. 313; *Dutcher* v. *Grand*

*Rapids Fire Ins. Co.*, 131 Mich. 671, 92 N. W. 345 ; *Missouri, K. & T. Ry. Co.* v. *Houseley*, 37 Okl. 326, 132 P. 330 ; *Whitcomb* v. *Atkins*, 40 Neb. 549, 59 N. W. 86 ; *Terre Haute & I. R. Co.* v. *Baker*, 122 Ind. 433, 24 N. E. 83 ; *State* v. *Grugett*, 228 Mo. App. 8, 63 S. W. (2d) 413.

In reaching the conclusion that the court had no jurisdiction to render the garnishee judgment, we have assumed that the void character of the proceedings relied upon by the bank as a defense to the action against it appeared from the face of the record placed in evidence by it and relied ■ upon by the trial court as the basis for its judgment in favor of the bank. The element forming the basis for holding the proceedings void is that the property sought to be garnisheed was the property of a quasi public body, against whose property no garnishment could issue, and the judgment sought to be enforced was not enforceable by garnishment.

We have yet to consider, therefore, whether that basic element is disclosed on the face of the record. The original judgment upon which the execution and garnishment proceedings were based and an abstract of which was docketed in the district court of Salt Lake county was rendered against the Upper Blue Bench Irrigation District. All subsequent proceedings carried this same name as the judgment debtor. The only tangible evidence before the court at the time it rendered its garnishee judgment that an irrigation district was involved was this name. The answer of the bank to the writ of garnishment contained no additional disclosure of the character of the judgment debtor. The query above posed becomes important as the suit brought by the district involves a collateral attack upon the proceedings relied upon by the bank as a defense, and the question of proof of the invalidity of such proceedings is involved. Ordinarily, the invalidity of the proceedings must appear on the face of the record, and in the case before us no attempt was made to prove the invalidity of the garnishee judgment except by the record itself.

We have not discovered any statutory provision which directly prescribes that the words "irrigation district" are reserved exclusively for use in the corporate name of an irrigation district organized pursuant to the law and may not be used by some private organization. However, the words are peculiarly and essentially applicable to such a district and are used throughout the act permitting the creation of such districts as the name or means by which such bodies are designated and referred to. In addition Section 13, c. 68, 1919 Laws, provides:

"Judicial notice shall be taken in all action, suits and judicial proceedings in any court of this State of the organization and existence of any irrigation district of this State, now or hereafter organized, from and after the filing in the office of the county clerk of the order of the Board of County Commissioners mentioned in Section 5 of this act."

Section 5, as amended by Laws 1921, c. 73, requires the board of county commissioners to canvass the returns of the election held to determine whether the districts should be organized. If a majority of the votes are in favor of the organization, the board shall make an order declaring the territory involved duly organized as an irrigation district under the name and style designated, and shall immediately file a copy of such order with the county clerk. A certified copy is to be filed with the county recorder. "From and after the date of such filing, the organization of such district shall be complete."

Under such provisions the name of the judgment debtor, the Upper Blue Bench Irrigation District, was sufficient to advise the court in the execution and garnishment proceedings that such debtor was a public body, whose property was not subject to execution or garnishment. It had judicial knowledge of the organization and existence of the district, and such knowledge necessarily would involve knowledge of the organization and existence of the district under the name by which the district was designated. It would know

also that a judgment could not have been obtained against the district before its organization. The district being in fact, and shown by the record to be, an irrigation district, the immunity of its property from execution and garnishment necessarily followed. The record, therefore, would be sufficient on its face to show want of jurisdiction to seize by execution or garnishment the district's property without requiring other evidence to show the judgment debtor before the court was in fact an irrigation district.

Since we hold that the proceedings relied upon by the bank as a defense do not constitute a defense, it is not necessary for us to discuss the question as to whether the bank fully performed its obligation to the district in failing to give it actual notice of the proceedings, and in failing to set out in its answer to the writ of garnishment the defense that the funds in its possession were not subject to execution and garnishment.

The judgment of the lower court is reversed, and the cause is demanded to the district court of Salt Lake county for a new trial; appellant to recover its costs.

FOLLAND, C. J., and MOFFAT and LARSON, JJ., concur.

WOLFE, Justice (concurring).

The conclusions of the court's opinion seemingly rest on three propositions: (1) That irrigation districts are public corporations, quasi municipal in character, and that their funds cannot be levied on. (2) That a judgment against the garnishee in favor of defendant for the use and benefit of plaintiff was void because the levy was void, and any process in aid of the levy was therefore void. Hence, a judgment founded on that process of garnishment and answer was void. (3) That the judgment on garnishment introduced in this action as a defense by the bank was on its face void, and therefore evidence to show its voidness in a collateral attack was not necessary. The fact that it appeared to be against an irrigation district, plus the fact, of which the court would

take judicial notice, that the Upper Blue Bench Irrigation District was in fact an irrigation district organized under the irrigation district law, made evidence of the voidness of the judgment.

It will be noted that the last proposition has implicit in it the conception that no property of an irrigation district can be levied on. Otherwise, it would be necessary to show that the moneys in the bank levied on and collected through garnishee judgment were not such as could be levied on. If there are some credits which can be and some which cannot be levied on, depending on what fund of the district they are a part of or what they were to be used for, the voidness of the judgment could not be proved except by showing that these moneys, or in this case more technically credits, were of the class which could not be reached by levy. In such case, disclosure of the fact alone that the garnishee judgment was against an irrigation district would not show the voidness of the judgment. I am of the opinion that no property of the district can be levied on.

While the excerpt quoted in the main opinion from the case of *Utah Oil Refining Co.* v. *Millard County Drainage Dist. No. 4*, 90 Utah 67, 50 P. (2d) 774, avoids absolutism by using the phrase, "except perhaps," I can think of no property which would not be for bondholders, or for maintenance and repair, or construction or for government. Certainly, creditors, even entitled to participate in any of those particular funds because of materials delivered or services rendered or loans made, would have to proceed by mandamus for a warrant on those various funds, and if there was nothing with which to pay the warrant, then to require a levy to meet it.

I concur.