2006 UT App 144

**Joan B. BOOTH, Plaintiff and Appellant,**

v.

**John W. BOOTH, Defendant.**

**Brent Theodore Booth, Trustee of the Charlotte Booth Revocable Trust, Garnishee and Appellee.**

**No. 20050242–CA.**

Court of Appeals of Utah.

April 13, 2006.

---

Russell Blood, Draper, for Appellant.

Gregory P. Hawkins and Rick L. Sorensen, Hawkins & Sorensen, Murray, for Appellee.

Before Judges BILLINGS, DAVIS, and McHUGH.

## OPINION

BILLINGS, Judge:

¶ 1 Plaintiff Joan B. Booth (Booth) appeals the trial court's order granting Garnishee Brent Theodore Booth's (Trustee) motion to quash Booth's writ of garnishment. Booth contends the trial court erroneously concluded that Booth's execution of a general release of liability warranted it granting Trustee's motion to quash. Additionally, Booth appeals the trial court's order denying Booth's motion for a new trial under Utah Rule of Civil Procedure 59(a)(7). *See* Utah R. Civ. P. 59(a)(7). Booth argues the trial court erred in relying on the trust's spendthrift provision to deny her rule 59 motion. We reverse.[1]

## BACKGROUND

¶ 2 In January 1988, Booth divorced Defendant John W. Booth (Defendant). In its divorce decree, the trial court ordered Defendant to pay $50 a month per child in child support. At the time of the divorce, Booth and Defendant had two minor children. Following the divorce, Defendant failed to make all but one of his support payments. In February 2004, the trial court held Defendant in contempt of court "for his willful failure and refusal to pay $20,703.39 [in] child support." The trial court awarded Booth the above outstanding balance plus interest. Subsequently, the trial court supplemented Booth's judgment to cover her attorney fees and expenses, for a total of $22,115.05.

¶ 3 In March 1994, Charlotte Brown Booth, Defendant's mother (Settlor), created the Charlotte Booth Revocable Trust (the Trust). Under the terms of the Trust, the Trust was to terminate on Settlor's death and the Trustee was to "distribute the property of such Trust" to the Trust's beneficiaries. Settlor died on December 2, 2002.

¶ 4 On February 14, 2003, Booth, a beneficiary upon receipt of a share of the Trust,

signed an "Acceptance of Inheritance and General Release" (the Release). Under the Release, Booth agreed to: (1) "[a]cknowledge that [Trustee] ha[d] acted with fidelity, diligence[,] and integrity in administering the [Trust]"; (2) "covenant not to sue the [Trust] or its Trustee, ... and agree that [the Release] shall serve as a " 'General Release' " of the Trust and Trustee named from any and all liability, claim[,] or demand whatsoever"; and (3) "covenant to hold the ... Trust and Trustee harmless and indemnify them fully, including attorney[ ] fees." [2]

¶ 5 Defendant was also a beneficiary of the Trust. However, because the Trustee has been unable to locate Defendant for the past three years, the Trustee still holds Defendant's share of the Trust.

¶ 6 In May 2004, Booth served Trustee with a writ of garnishment (the Writ). Booth sought to garnish Defendant's share of the Trust to recover the court entered judgment against Defendant for $22,115.05 in unpaid child support. The trial court upheld the Trustee's motion to quash the Writ, concluding that in signing the Release, Booth had "released the Trust from any and all future claims of liability."

¶ 7 Booth then moved for a new trial under rule 59(a)(7). *See* Utah R. Civ. P. 59(a)(7). The trial court, relying on the Trust's spendthrift provision, denied Booth's motion. The Trust's spendthrift clause provided that

> no beneficiary shall have any right to anticipate, sell, assign, mortgage, pledge, or otherwise dispose of or encumber all or any part of the Trust Estate nor shall any part of the Trust Estate, including income, be liable for the debts or obligations, including alimony, of any beneficiary or be subject to attachment, garnishment, execution, creditor's bill, or other legal or equitable process.

---

1. In his brief, Trustee cross-appeals for failure of the trial court to rule on his request for attorney fees. However, Trustee failed to file his cross-appeal within fourteen days of Booth's notice of appeal as required by rule 4(d) of the Utah Rules of Appellate Procedure. *See* Utah R.App. P. 4(d). Consequently, this court, in a November 15, 2005 order, dismissed Trustee's cross-appeal.

2. In signing the Release, Booth also agreed to "[a]cknowledge and accept the amount [she had received] as the correct and appropriate amount due [her] under the terms of the Trust."

¶ 8 Booth appeals the trial court's order granting Trustee's motion to quash the Writ, as well as the trial court's order denying her rule 59 postjudgment motion.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 9 Booth maintains the trial court incorrectly concluded that her execution of the Release effectively barred the Writ and warranted the court granting Trustee's motion to quash the Writ. "We review the lower court's contractual interpretation of [a] release ... for correctness, affording the district court no deference." *Hawkins v. Peart,* 2001 UT 94, ¶ 4, 37 P.3d 1062.

¶ 10 Booth also contends the trial court erred in relying on the Trust's spendthrift clause to deny her rule 59 motion. We would normally review the trial court's denial of Booth's rule 59 motion "for an abuse of discretion." *State v. Loose,* 2000 UT 11, ¶ 8, 994 P.2d 1237. However, here, where the trial court relied on its interpretation of the Trust's spendthrift provision as grounds for denying Booth's motion, "such a legal decision is reviewed under a correctness standard." *Crookston v. Fire Ins. Exch.,* 860 P.2d 937, 938 (Utah 1993).

## ANALYSIS

### I. The Release

■ ¶ 11 On appeal, Booth claims the trial court erred in determining that Booth's execution of the Release barred her filing the Writ. We agree.

¶ 12 In February 2003, Booth, upon accepting her share of the Trust proceeds, signed the Release, entitled "Acceptance of Inheritance and General Release." In signing the Release, Booth agreed to acknowledge Trustee's fidelity, diligence, and integrity in administering the Trust. Booth also agreed, pursuant to the terms of the Release, that the amount she received under the Trust was correct and that she would not sue the Trust.

Specifically, Booth agreed that the Release served as a " 'General Release' of the Trust and Trustee ... from any and all liability, claim, or demand whatsoever."

¶ 13 Trustee argues, and the trial court agreed, that where the Release served to discharge the Trust and Trustee from "any and all liability," the language of the Release precluded Booth from bringing the Writ and garnishing Defendant's share of the Trust, which he has a present right to receive.[3] However, given the nature and purpose of the garnishment proceeding, and the garnishee's role in it, we determine that the Writ did not constitute a lawsuit against the Trust or Trustee—nor was it a claim, demand, or action to hold the Trust or Trustee liable for any wrongdoing.

¶ 14 Under rule 64D of the Utah Rules of Civil Procedure, "[a] writ of garnishment is available to seize property of the defendant in possession or under the control of a person other than the defendant." Utah R. Civ. P. 64D(a). The Utah Supreme Court has described rule 64D as being a rule "designed to facilitate collection" of debts owed to a judgment creditor by a judgment debtor. *Whitney v. Faulkner,* 2004 UT 52, ¶ 19, 95 P.3d 270;[4] *see also* Utah R. Civ. P. 64D(b)(1).

¶ 15 Courts have typically regarded garnishment as a "supplementary or extraordinary proceeding[ ], and [have] generally considered [it a] provisional remed[y]." 6 Am. Jur.2d *Attachment and Garnishment* § 16 (2d ed.1999). The Utah Rules of Civil Procedure reflect this view, providing for a writ of garnishment under Part VIII of the rules, entitled "Provisional and Final Remedies and Special Proceedings." Utah R. Civ. P. 64(d).

■ ¶ 16 Due to the nature and objective of the garnishment proceeding, "[a]s a general rule, ... garnishment is not an original action but is ancillary to the original action

---

**3.** The Trust states that the "Trust shall terminate upon the death of Settlor" and "[u]pon termination, ... Trustee shall distribute the then remaining principal." Settlor died on December 2, 2002, thus giving Defendant legal entitlement to his distribution as of that date.

**4.** In 2004, the Utah Legislature repealed the version of rule 64D examined in *Whitney v. Faulkner,* 2004 UT 52, 95 P.3d 270. Dissimilar to the current rule, the previous version "set[ ] out in detail the procedures for writs of garnishment." Utah R. Civ. P. 64D, Repeals and Reenactments.

seeking judgment."[5] *Attachment and Garnishment, supra,* § 18. Utah adheres to this general rule. *See Bristol v. Brent,* 35 Utah 213, 99 P. 1000, 1001 (Utah 1909) ("[G]arnishment proceedings in this state are not independent proceedings, but are merely in aid of an action commenced concurrently with or prior to such proceedings."); *see also* Utah R. Civ. P. 64D(a) (indicating the ancillary nature of garnishment proceedings: "[a] writ of garnishment is available after final judgment or after the claim has been filed and prior to judgment").

¶ 17 Accordingly, Utah courts have indicated that the garnishee is "a neutral party to the garnishment proceedings." *Whitney,* 2004 UT 52 at ¶ 18, 95 P.3d 270 (involving trustee acting as garnishee); *see also Attachment and Garnishment, supra,* § 522 ("[The] garnishee is ... presumably indifferent as to who ultimately obtains the money or property."). That is, "[a] garnishee is ... an innocent person," *id.,* in a proceeding in which he or she is "merely a stakeholder,"[6] *Upper Blue Bench Irrigation Dist. v. Continental Nat'l Bank & Trust Co.,* 93 Utah 325, 72 P.2d 1048, 1053 (Utah 1937); *see also Attachment and Garnishment, supra,* § 522 (describing garnishee as "a mere stakeholder or custodian of the garnished debt or property"); H.D. Warren, Annotation, *Garnishee's Pleading, Answering Interrogatories, or the Like, as Affecting His Right to Assert Court's Lack of Jurisdiction,* 41 A.L.R.2d 1093, 1098 (1955) ("[G]arnishee[is] a mere stakeholder between the plaintiff and the defendant.").

¶ 18 Consequently, in the present case, where the Writ was "but an incident of [Booth's] suit," *Attachment and Garnishment, supra,* § 67, against Defendant for unpaid child support, we reject Trustee's claim that, despite his neutral party status to the garnishment proceeding, the Writ constituted a separate and original action against him or the Trust. We therefore conclude the Release was inapplicable to and ineffective against the Writ.

## II. The Spendthrift Provision

¶ 19 Booth also argues the trial court erroneously concluded that the Trust's spendthrift provision impeded her bringing the Writ. We agree.

¶ 20 Utah has adopted the Uniform Trust Code and defines "spendthrift provision" as "a term of a trust which restrains both voluntary and involuntary transfer or encumbrance of a beneficiary's interest." Utah Code Ann. § 75-7-103(1)(*l*) (Supp.2005). Here, the terms of the Trust provided that:

> no beneficiary shall have any right to anticipate, sell, assign, mortgage, pledge, or otherwise dispose of or encumber all or any part of the Trust Estate nor shall any part of the Trust Estate, including income, be liable for the debts or obligations, including alimony, of any beneficiary or be subject to attachment, garnishment, execution, creditor's bill, or other legal or equitable process.

¶ 21 Under Utah law, "[a] beneficiary may not transfer an interest in a trust in violation of a valid spendthrift provision[7] and ... a creditor or assignee of the beneficiary may not reach the interest or a distribution by the trustee before its receipt by the beneficiary." Utah Code Ann. § 75-7-502(3) (Supp.2005). However, and of utmost importance here, section 75-7-503(2) of the Utah Code renders spendthrift provisions null and void against the claims of a beneficiary's child for court-ordered child support. *See* Utah Code Ann. § 75-7-503(2) (Supp.2005). Section 75-7-503 states that "[e]ven if a trust contains a spendthrift provision, a beneficiary's child who has a judgment or court order against the beneficiary for support or maintenance

5. "In some jurisdictions, however, garnishment proceedings are distinct from the underlying action." 6 Am.Jur.2d *Attachment and Garnishment* § 18 (2d ed.1999). *See also Pena v. Trujillo,* 117 N.M. 371, 871 P.2d 1377 (Ct.App.1994); *Hildebrand v. Gray,* 866 P.2d 447 (Okla.Ct.App.1993).

6. A stakeholder is defined as "[a] disinterested third party who holds money or property, the right to which is disputed between two or more other parties." *Black's Law Dictionary* 1440 (8th ed.2004).

7. Here, where the parties or the trial court made no contentions or determinations otherwise, we assume the Trust's spendthrift provision was valid.

... may obtain from a court an order attaching present or future distributions to or for the benefit of the beneficiary." *Id.*

¶ 22 Although Trustee acknowledges this exception to a beneficiary's immunity under a valid spendthrift provision, he argues the exception is inapplicable here because Booth did not attach present or future distributions but rather sought to garnish the proceeds before they had been distributed to Defendant. Thus, in this case, where Trustee has been unable to locate Defendant, Trustee argues that Booth cannot garnish Defendant's share under the child support exception until Defendant actually receives his distribution.

¶ 23 The trial court appeared to adopt Trustee's reasoning, citing Utah Code section 75-7-502 in support of its determination. *See id.* § 75-7-502(3) ("A beneficiary may not transfer an interest in a trust in violation of a valid spendthrift provision and ... a creditor or assignee of the beneficiary may not reach the interest or distribution by the trustee before its receipt by the beneficiary."). We disagree that section 502 prohibited the Writ in this case.

 ¶ 24 "When interpreting statutes, this court first looks to the [statute's] plain language." *State v. Barrett,* 2005 UT 88, ¶ 29, 127 P.3d 682. "We presume that the legislature used each word advisedly and give effect to each term according to its ordinary and accepted meaning." *Id.* (quotations and citation omitted). "Furthermore, we 'read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters.'" *Id.* (quoting *Miller v. Weaver,* 2003 UT 12, ¶ 17, 66 P.3d 592). If the language of the statute is plain, "[o]ther interpretative tools are not needed in analyzing the statute." *Id.*

¶ 25 Here, in expressly creating section 75-7-503's "[e]xceptions to spendthrift provision," *see* Utah Code Ann. § 75-7-503, the legislature clearly indicated that the rules governing spendthrift provisions do not pertain to those individuals against whom the spendthrift provision is unenforceable. Thus, section 502's requirement that beneficiaries need have received their distribution before creditors can reach it, is inapplicable to a section 503 exception.

¶ 26 We have found no Utah cases that interpret or apply Utah Code sections 75-7-502 or 75-7-503. *See* Utah Code Ann. §§ 75-7-502 to -503. Nor have we found any cases from other jurisdictions that have adopted the Uniform Trust Code that discuss these sections.[8] However, our interpretation is consistent with the general comment of the drafters of the Uniform Trust Act's Article 5.[9] The general comment explains that

> Section 502 states the effect of a spendthrift provision. Unless a claim is being made by an exception creditor, a spendthrift provision, bars a beneficiary's creditor from reaching the beneficiary's interest until distribution is made by the trustee. An exception creditor, however, can reach the beneficiary's interest subject to the court's power to limit the relief. Section 503 list the categories of exception creditors whose claims are not subject to a spendthrift restriction.

Unif. Trust Code §§ 501-507, General Comment, 7C U.L.A. 250 (Supp.2005); *see also id.* § 502, Comment ("Unless one of the exceptions under this article applies, a creditor

---

8. Those jurisdictions that have adopted the 2000 Uniform Trust Code are the District of Columbia, Kansas, Maine, Missouri, Nebraska, New Hampshire, New Mexico, Tennessee, Utah, and Wyoming. *See* Unif. Trust Code §§ 102-1106, 7C U.L.A. 177-336 (Supp.2005). Arkansas also adopted its version of the Uniform Trust Code in 2005. *See* Ark.Code Ann. §§ 28-73-101 to -1106 (LEXIS through 2005 Sess.). Several of these states do not recognize an exception to the spendthrift provision for child support. *See id.;* Kan. Stat. Ann. §§ 58a-101 to -1107 (LEXIS through 2004 Supp.); Me.Rev.Stat. Ann. tit. 18, §§ 101 to -1104 (LEXIS through 2005 legislation); Tenn.Code Ann. §§ 35-15-101 to -1103 (LEXIS through 2005 Sess.).

9. *See Schurtz v. BMW of N. Am., Inc.,* 814 P.2d 1108, 1113 (Utah 1991) (noting that court's reading of the statute was "consistent with ... the comments of the drafters of the Uniform Commercial Code").

of the beneficiary is prohibited from attaching a protected interest and may only attempt to collect directly from the beneficiary after payment is made.").[10]

¶27 Thus, despite a trust's spendthrift provision, Utah law allows the child of a beneficiary,[11] who is entitled to court-ordered child support, to "obtain from a court an order attaching present or future distributions," Utah Code Ann. § 75-7-503(2), even if the trustee has not yet distributed the beneficiary's interest. Therefore, in accordance with specific Utah statutory provisions, we conclude that the Trust's spendthrift provision did not bar Booth from bringing the Writ.

## CONCLUSION

¶28 In summary, we reverse, concluding the trial court erroneously determined that the Release and the Trust's spendthrift provision prohibited the Writ.

¶29 I CONCUR: CAROLYN B. McHUGH, Judge.

¶30 I CONCUR IN THE RESULT: JAMES Z. DAVIS, Judge.

10. The parties also rely on and disagree in their applications of Utah Code section 75-7-506, entitled "Overdue distribution." *See* Utah Code Ann. § 75-7-506 (Supp.2005). Section 75-7-506 states:

> Whether or not a trust contains a spendthrift provision, a creditor or assignee of a beneficiary may reach a mandatory distribution of income or principal, including a distribution upon termination of the trust, if the trustee has not made the distribution to the beneficiary within a reasonable time after the required distribution date.

*Id.* This section, however, is irrelevant here since, like section 75-7-502, the section applies only to those creditors against whom the spendthrift provision is enforceable.

11. Here, Booth stands in the shoes of her and Defendant's children, as she has supported the children and has a judgment establishing past support owed by Defendant.