240 P.3d 107 (2010)
2010 UT App 254
Connie FLOREZ, Plaintiff and Appellee,
v.
SCHINDLER ELEVATOR CORPORATION, Defendant and Appellant.
No. 20090299-CA.
Court of Appeals of Utah.
September 16, 2010.
*109 Scott M. Lilja and Cassie J. Medura, Salt Lake City, for Appellant.
Erik M. Ward and Lindy W. VanDyke, Ogden, for Appellee.
Before Judges ORME, THORNE, and VOROS.

OPINION
THORNE, Judge:
¶ 1 Schindler Elevator Corporation (Schindler) appeals from a jury verdict and judgment in favor of Connie Florez. Florez sued Schindler alleging that Schindler had negligently maintained an elevator at Florez's place of employment, causing Florez to become trapped in an elevator car for some forty-five minutes. Upon her release, Florez fainted and fell to the floor, hitting her head. The fall caused Florez to suffer permanent *110 injuries, most particularly benign positional paroxysmal vertigo (BPPV).[1] We affirm the district court's judgment.

BACKGROUND
¶ 2 On June 15, 2004, Florez was riding in an elevator at her workplace when a malfunction caused the elevator to come to a stop with the doors shut. Florez was trapped alone in the elevator car for approximately forty-five minutes before her coworkers managed to release her. Upon her release, Florez fainted and fell to the floor, striking her head. Florez was taken to the emergency room, underwent testing to ensure that her fainting was unrelated to a preexisting heart condition, and was released after several hours with instructions to follow up with her primary care physician.
¶ 3 On September 17, 2004, Dr. John Siddoway examined Florez for complaints of dizziness. At this time, Dr. Siddoway diagnosed Florez with BPPV, a permanent condition that causes short bursts of dizziness and feelings of vertigo depending on head position. BPPV results from the detachment of small crystals, or canaliths, within the ear canal and can be caused by head trauma.
¶ 4 On April 14, 2005, Florez sued Schindler for negligence for injuries arising from the elevator incident, including her BPPV. Florez apparently designated only one expert witness, Dr. Brian Morgan. Dr. Morgan's expert report identified a list of Florez's medical records that he had reviewed prior to forming his opinions, including Dr. Siddoway's 2004 report diagnosing Florez with BPPV. Dr. Morgan's report summarized Florez's medical and social history, her medications, and the results of Dr. Morgan's own physical examination of Florez, which did not include any specific testing for BPPV. Dr. Morgan's reported impressions were "1. Status post injury on 06/15/[04] when she had an accident in elevator, lost consciousness, and hit her head and neck. 2. [BPPV] as related to the elevator accident." The report concluded with four "recommendations" addressing concerns raised in a letter from Florez's counsel, including the nature and extent of Florez's injuries, an impairment evaluation, future medical needs and costs, and Florez's prognosis. The report contained no other statement linking Florez's BPPV to the elevator incident.
¶ 5 After receiving Dr. Morgan's expert report, Schindler filed a motion for summary judgment, arguing in part that Florez could not demonstrate a link between the elevator incident and her BPPV. Specifically, Schindler relied on the opinion of its own expert, Dr. Richard T. Knoebal, as evidence that Florez suffered from dizziness and vertigo prior to the elevator incident and that any such symptoms were not caused by that incident. Schindler's motion characterized Dr. Knoebal's opinion as undisputed, stating that, "[a]lthough Dr. Morgan's [report] acknowledges that [Florez] is suffering from dizziness/vertigo, the report does not comment on the cause of such diagnosis." Florez opposed Schindler's motion, arguing that Dr. Morgan's report did state that the elevator incident caused Florez's injuries. The district court denied the motion for summary judgment, noting that disputed material issues of fact existed so as to preclude summary judgment.[2]
¶ 6 Schindler sought to have Dr. Morgan's testimony excluded following Dr. Morgan's deposition. Schindler argued first that Dr. Morgan was incompetent to testify about causation of Florez's BPPV because he was not a neurologist; next that Dr. Morgan had failed to independently verify that Florez suffered from BPPV and that his diagnosis instead merely parroted Dr. Siddoway's 2004 diagnosis; and finally that Dr. Morgan was incompetent to testify because his deposition testimony revealed that his opinion that the elevator incident caused Florez's BPPV was based solely on the fact that Florez's BPPV *111 symptoms arose after the elevator incident.[3] The district court denied Schindler's motion to exclude Dr. Morgan's testimony.
¶ 7 At trial, Schindler stipulated that its negligent maintenance caused the elevator stoppage and Florez's resulting confinement, leaving the issues of whether the elevator incident caused Florez's BPPV and what her monetary damages were. Over Schindler's objection, the district court allowed Florez's treating physicians to testify that Florez's condition was consistent with a fall but ruled that the treating physicians could not offer expert medical testimony that the elevator incident caused Florez's BPPV. Dr. Morgan also testified, offering his expert opinion that the elevator incident caused Florez's BPPV. Schindler countered with the testimony of Dr. Knoebal, and the jury ultimately found for Florez and awarded past and future special damages and general damages totaling $331,147. The district court denied Schindler's motion for a new trial, and Schindler now appeals the district court's final judgment.

ISSUES AND STANDARDS OF REVIEW
¶ 8 Schindler first raises multiple issues relating to the medical causation of Florez's BPPV, including challenges to the district court's denial of Schindler's motion for summary judgment, its refusal to strike portions of Florez's affidavit, its refusal to exclude Dr. Morgan's testimony, and its refusal to grant a directed verdict on the issue of causation. Schindler also argues that Florez's treating physicians testified as to the causation of Florez's BPPV in violation of the district court's order. Generally, we review a district court's "denial of summary judgment for correctness, and view[] the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party," Orvis v. Johnson, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted), while we review the denial of a motion for directed verdict by examining "the evidence and all reasonable inferences that may fairly be drawn therefrom in the light most favorable to the party moved against, and will sustain the denial if reasonable minds could disagree with the ground asserted for directing a verdict," Renegade Oil, Inc. v. Progressive Cas. Ins. Co., 2004 UT App 356, ¶ 6, 101 P.3d 383 (internal quotation marks omitted). "We review the district court's evidentiary rulings under an abuse of discretion standard." Olson v. Olson, 2010 UT App 22, ¶ 10, 226 P.3d 751, cert. denied, No. 20100196, 238 P.3d 443 (Utah July 1, 2010).
¶ 9 Schindler next argues that the district court erred in denying a directed verdict to Schindler on Florez's claims for past and future medical expenses because neither her medical bills nor evidence of her life expectancy were ever admitted into evidence. Again, we will affirm the district court's denial of Schindler's motion "if reasonable minds could disagree with the ground[s] asserted for directing a verdict." Renegade Oil, Inc., 2004 UT App 356, ¶ 6, 101 P.3d 383 (internal quotation marks omitted).
¶ 10 Finally, Schindler argues that the district court erred in denying its motion for new trial, which sought relief on grounds that the district court improperly instructed the jury on aggravation of preexisting conditions and that Florez's counsel made improper statements at opening and closing arguments. We ordinarily review the district court's denial of a new trial motion only for an abuse of discretion. See Booth v. Booth, 2006 UT App 144, ¶ 10, 134 P.3d 1151.

ANALYSIS

I. Causation Issues
¶ 11 Throughout this litigation, Schindler has challenged Florez's ability to demonstrate *112 that her BPPV was caused by the elevator incident. These challenges included motions for summary judgment on causation, to strike Florez's affidavit, to exclude Dr. Morgan's expert testimony, and for a directed verdict on causation. Despite Schindler's efforts, the jury was allowed to consider Florez's case and hear Dr. Morgan's testimony, after which it found that the elevator incident was the cause of Florez's BPPV. Schindler raises multiple appellate arguments relating to the causation issue.

A. Schindler's Motion for Summary Judgment
¶ 12 Schindler sought summary judgment on the ground that Florez could not demonstrate that the elevator incident caused her injuries. In support of its motion, Schindler presented the expert opinion of Dr. Knoebal that the elevator incident did not cause the injuries. Schindler further argued that any showing of causation by Florez would have to come from her medical expert, Dr. Morgan, and that Dr. Morgan's report did not contain any opinion on causation. In opposition, Florez contended that Dr. Morgan's report did state an opinion that her injuries "were caused by the episode in the elevator and subsequent fall."
¶ 13 The district court denied Schindler's motion, stating merely that the motion was "denied for the reason that disputed material issues of fact exist which preclude summary judgment." Although the district court did not indicate the source of the factual dispute, it is clear from the court's subsequent comments that it interpreted Dr. Morgan's report as stating an opinion on causation.[4] We agree with the district court that Dr. Morgan's report can be reasonably interpreted as stating an opinion that the elevator incident was the cause of Florez's BPPV.
¶ 14 As to causation, Dr. Morgan's report merely stated as one of his impressions that Florez was suffering from "[BPPV] as related to the elevator accident." Although we acknowledge the brevity of Dr. Morgan's statement of causation, we cannot agree with Schindler that Dr. Morgan gave no opinion of causation at all. Indeed, in context, it is difficult to read the language "related to" the elevator incident as meaning anything other than "caused by" the elevator incident.
¶ 15 The district court's interpretation of Dr. Morgan's report was reasonable and identified a material factual dispute as to causation. Accordingly, the district court properly denied Schindler's motion for summary judgment. See generally Utah R. Civ. P. 56(c) (stating that summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law").

B. Schindler's Motion to Strike Florez's Affidavit
¶ 16 In addition to relying on Dr. Morgan's report to oppose Schindler's motion for summary judgment, Florez submitted her own affidavit attesting to her version of events surrounding her injuries. Schindler sought to strike portions of Florez's affidavit, arguing that she was stating an opinion as to the cause of her injuries and that lay opinion cannot establish medical causation. Schindler argues on appeal that the district court erred in denying its motion to strike.
¶ 17 We first note that any error in failing to strike Florez's affidavit would be harmless. The only purpose of Florez's affidavit was to oppose Schindler's motion for summary judgment, and we have determined that the district court properly denied summary judgment based on the contents of Dr. *113 Morgan's report. Accordingly, even if Florez's affidavit was somehow inappropriate, Schindler suffered no prejudice from the district court's failure to strike it.
¶ 18 However, we also see nothing in Florez's affidavit that would have required the district court to strike it. The portion of the affidavit challenged by Schindler stated,
3) During my time in the elevator, I suffered an anxiety attack which caused significant emotional and physical distress.
4) As a result of the distress and anxiety experienced in the elevator car, I fainted when the door [was] pried open and I was assisted from the elevator car. Despite the attempts of my co-workers to catch me, I fell to the floor on my left side and my head hit the floor hard.
5) As a result of the fall to the floor, I dislodged three ribs and aggravated and experienced a significant amount of pain in my back, shoulder, and neck. Furthermore, I suffered significant vertigo and dizziness after the fall, which has continued to the present.
Schindler argues that these statements represent lay opinion testimony as to the medical causation of Florez's injuries and that, as such, they were insufficient to defeat summary judgment and allow Florez's claims to go to a jury. See generally Beard v. K-Mart, 2000 UT App 285, ¶ 16, 12 P.3d 1015 ("[I]n all but the most obvious cases, testimony of lay witnesses regarding the need for specific medical treatment is inadequate to submit the issue to the jury.").
¶ 19 We disagree with Schindler's characterization of Florez's affidavit as one stating opinions on medical causation. Although Florez's affidavit uses the phrase "as a result of" several times, the affidavit properly speaks to Florez's factual recollection of the elevator incident and the consequences thereof, including pain and injury. See generally id. ("[The plaintiff] was properly permitted to testify that the accident in the store caused pain and injury."). Schindler is correct that such testimony cannot establish medical causation in cases where such causation would not be obvious to a layperson. See id. ¶ 17 ("Where the injury involves obscure medical factors which are beyond an ordinary lay person's knowledge, necessitating speculation in making a finding, there must be expert testimony that the negligent act probably caused the injury." (internal quotation marks omitted)). However, we see no error in the district court considering Florez's perceptions of the timing and nature of her injuries as fact testimony that was both consistent with Dr. Morgan's expert opinion and relevant to the causation issue.
¶ 20 In sum, we see no error in the district court's refusal to strike Florez's affidavit. And, to the extent any error did occur, it was not prejudicial because Dr. Morgan's opinion alone sufficed to require the denial of Schindler's motion for summary judgment.

C. Schindler's Motion in Limine
¶ 21 As trial approached, and after taking Dr. Morgan's deposition, Schindler filed a motion in limine seeking to exclude Dr. Morgan from testifying as to the causation of Florez's injuries. Schindler argues on appeal that the district court erred in denying its motion in limine because Dr. Morgan's expert report contained no opinion regarding the cause of Florez's injuries and because Dr. Morgan was not competent to testify about BPPV. "`The trial court has wide discretion in determining the admissibility of expert testimony,' and `we will not reverse unless the decision exceeds the limits of reasonability.'" Balderas v. Starks, 2006 UT App 218, ¶ 27, 138 P.3d 75 (quoting State v. Larsen, 865 P.2d 1355, 1361 (Utah 1993)).
¶ 22 We have already determined that Dr. Morgan's expert report did state an opinion on the causation of Florez's BPPV, see supra ¶¶ 13-15, and we turn to Schindler's second argument that Dr. Morgan was not competent to testify on the BPPV issue. Schindler challenges Dr. Morgan's qualifications to testify about BPPV in light of his training in injury rehabilitation rather than some more specialized area of medicine directly related to BPPV. Schindler also asserts on appeal that there is an insufficient independent medical basis for Dr. Morgan's causation opinion, apparently because Dr. Morgan based his opinion on the diagnoses of other doctors and the timing of the onset of *114 Florez's BPPV symptoms in relation to the elevator incident, as opposed to a specific diagnostic evaluation or test.
¶ 23 In arguing that Dr. Morgan is incompetent to testify as to the cause of Florez's BPPV, Schindler relies on the general rule that, "ordinarily, a practitioner of one school of medicine is not competent to testify as an expert in a malpractice action against a practitioner of another school." Burton v. Youngblood, 711 P.2d 245, 248 (Utah 1985). Even assuming that the general rule in malpractice actions has any relevance to this negligence actiona proposition on which we express no opinionthe general rule is no bar to expert testimony "`when a witness is knowledgeable about the standard of care of another specialty or when the standards of different specialties on the issue in a particular case are the same.'" Dikeou v. Osborn, 881 P.2d 943, 947 (Utah Ct.App.1994) (quoting Arnold v. Curtis, 846 P.2d 1307, 1310 (Utah 1993)).
¶ 24 Both exceptions appear to apply in this case.[5] The question in this case is not the proper treatment of Florez's BPPV but rather its causation. Dr. Morgan's experience as a physiatrist, a medical doctor specializing in injury rehabilitation, provided him with "specialized knowledge" relating to traumatic injuries. See Eskelson v. Davis Hosp. & Med. Ctr., 2010 UT 15, ¶ 15, 651 Utah Adv. Rep. 33 ("[The witness's] testimony regarding his experience as a physician constituted a threshold showing that his opinion was reliable. Amended rule 702 [of the Utah Rules of Evidence] requires no more."). Further, Schindler has provided no authority to suggest that there are differing standards for determining causation of BPPV between physicians in Dr. Morgan's field and other, more narrowly specialized physicians. In light of these considerations, the district court did not exceed its discretion when it determined that Dr. Morgan's training and experience were sufficient to allow him to offer expert medical testimony.
¶ 25 As for Schindler's assertion that Dr. Morgan's opinion lacks a medical basis, the supreme court has rejected the proposition that an expert may not rely on the diagnoses of other experts in forming his or her own opinion. See Patey v. Lainhart, 1999 UT 31, ¶¶ 29-33, 977 P.2d 1193. Nor do we see error arising from Dr. Morgan's reliance on the timing of the onset of Florez's BPPV symptoms. This court held in Beard v. K-Mart, 2000 UT App 285, 12 P.3d 1015, that a physician's testimony to a "chronological relationship between [an] accident and the [onset of] symptoms" was insufficient to establish causation, see id. ¶ 20, but in that case the physician expressly testified that he could not tie the plaintiff's accident to her symptoms to "any degree of reasonable probability," see id. ¶ 19. Here, Dr. Morgan was adamant in his deposition testimony that Florez's BPPV was caused by the elevator incident. Although Dr. Morgan's causation opinion rested upon a combination of Dr. Siddoway's assessment and the chronological relationship between the elevator accident and the onset of Florez's BPPV,[6] it remained Dr. Morgan's expert opinion and Florez was properly allowed to present it to the jury.
¶ 26 In sum, Dr. Morgan's medical training and experience rendered him a competent medical expert in this case, and Schindler has failed to persuade us that Dr. Morgan should not have been allowed to testify because of his lack of specialization, his reliance on the assessments made by other physicians, or his reliance on chronology as a basis of his causation opinion. For these reasons, the district court did not exceed its wide discretion in denying Schindler's motion in limine.

D. Schindler's Motion for Directed Verdict
¶ 27 After the jury reached its verdict, Schindler sought a directed verdict on the *115 causation issue. In support of its motion for directed verdict, Schindler argued that the only evidence that the elevator incident caused Florez's injuries was the testimony of Dr. Morgan and that Dr. Morgan's testimony had been improperly admitted because his report contained no opinion as to causation and he was not qualified to offer an opinion on the cause of Florez's BPPV.
¶ 28 For the reasons discussed above, we disagree with Schindler as to the admissibility of Dr. Morgan's testimony. In affirming the district court's summary judgment ruling, we have determined that Dr. Morgan's report did contain his opinion, however brief, that the elevator incident caused Florez's BPPV. See supra ¶¶ 13-15. And, in affirming the district court's ruling that Dr. Morgan could testify, we have determined that Dr. Morgan was qualified to offer an expert opinion on the causation of Florez's injuries due to his medical training and experience. See supra ¶ 26. These determinations also resolve Schindler's arguments that it was entitled to a directed verdict on causation, and we therefore affirm the district court's denial of Schindler's motion for a directed verdict on that issue.

E. Testimony by Treating Physicians
¶ 29 Schindler raises two final arguments relating to causation, both of which involve the testimony of Florez's treating physicians. Schindler argues that the treating physicians improperly testified as expert witnesses on medical causation and that the jury should have been instructed that the treating physicians' testimony was insufficient to establish medical causation. We reject each of these arguments.
¶ 30 Schindler first argues that Florez's treating physicians were not designated as expert witnesses and did not submit expert reports, see generally Utah R. Civ. P. 26(a)(3) (governing disclosure of expert testimony), and that their testimony should therefore have been limited to factually describing their treatment of Florez, see generally Pete v. Youngblood, 2006 UT App 303, ¶¶ 11-15, 141 P.3d 629 (discussing disclosure requirements for testimony of treating physicians). Indeed, the district court ordered as much when it ruled before trial that Florez's treating physicians would be limited to testifying about facts related to their treatment of Florez.
¶ 31 Nevertheless, Schindler asserts in its appellate brief that the district court "allowed the treating physicians to go outside their personal knowledge of [Florez's] treatment and to testify regarding causation of [Florez's] injuries." However, Schindler fails to provide citations to the record identifying the allegedly improper testimony, and we will not comb the record looking for error on an appellant's behalf. Cf. In re W.A., 2002 UT 127, ¶ 45, 63 P.3d 607 ("It is not our obligation ... to comb the record for evidence." (internal quotation marks omitted)). Because Schindler has failed to identify in its argument the testimony that it now claims is improper, we deem this issue to be inadequately briefed and decline to address it. See generally Utah R.App. P. 24(a)(9) ("The argument shall contain... citations to the authorities, statutes, and parts of the record relied on.").[7]
¶ 32 Schindler also argues that the jury should have been instructed that the treating physicians' testimony could not be used to establish causation. However, Schindler fails to identify in the record where this issue was preserved in the district court. See generally Utah R.App. P. 24(a)(5)(A) (requiring that an appellant's brief contain "citation to the record showing that the issue was preserved in the trial court"); Chapman v. Uintah Cnty., 2003 UT App 383, ¶ 26, 81 P.3d 761 *116 ("In order to appeal the giving or the refusal of a jury instruction, a party must properly object to the instructions in the trial court and explain its grounds, with specificity, for challenging the instructions." (internal quotation marks omitted)). Because Schindler has failed to establish that this issue was preserved for appeal, we do not consider it.

II. Medical Expenses
¶ 33 Schindler next challenges the jury's award of medical expenses, arguing that Florez failed to present an evidentiary basis for either past or future medical expenses. Schindler argues that Florez failed to present any admissible evidence establishing the amount of her past medical bills. Schindler also argues that Florez's failure to present expert testimony regarding her life expectancy precludes an award of future medical expenses. Accordingly, argues Schindler, it was entitled to a directed verdict on these issues.
¶ 34 Schindler is correct that Florez did not formally offer her past medical bills into evidence. However, pursuant to a stipulation by the parties, the jury was provided with summaries of Florez's medical bills prepared by both Florez and Schindler. Both summaries broke down Florez's various medical bills by date and provider, and both listed bills totaling slightly in excess of $20,000. The jury ultimately awarded $17,032.31 in past medical expenses.
¶ 35 The parties' stipulation regarding the summaries is not contained in the record on appeal, and Schindler disputes that it stipulated to allowing the jury to consider summaries instead of Florez's actual medical bills. Nevertheless, after hearing extensive argument from the parties, the district court ruled that the jury could consider Florez's summary:
I thought that there was a stipulation across the board that rather than produce all the witnesses and everything else you would stipulate to what the expenses were and what the medical records were, there would be no foundation and those things would go back to them. So I don't view this asit says summary. I wish it didn't say summary but I'm not trying this thing, nor am I defending it. The summary that I'm not going to let go back is [Florez's counsel's] picture and drawing where he summarizes the evidence. But I thought this was coming in as a stipulation as to what the expenses were rather than produce a second book that was this big that contained all of the records.
Thereafter, although it continued to object to the jury considering summaries at all, Schindler requested that its own summary also be submitted to the jury if Florez's was.
¶ 36 Schindler has failed to adequately challenge the district court's ruling that the parties stipulated to the summaries going to the jury in lieu of "a second book that was this big that contained all of the records." In light of the parties' failure to place their stipulation on the record, it is doubtful that Schindler could successfully mount such a challenge even if it had attempted to do so. See generally Hatch v. Davis, 2006 UT 44, ¶ 20, 147 P.3d 383 (stating the consequences of an appellant's submission of an incomplete record, including "that we `will presume the correctness of the disposition made by the trial court'"). Additionally, rule 1006 of the Utah Rules of Evidence allows for summaries of voluminous documents to be presented in the form of a "chart, summary, or calculation," so long as the underlying documents are made available to the opposing party. See Utah R. Evid. 1006. Although the district court did not formally admit the summaries as exhibits, the existence of rule 1006 serves to undercut Schindler's argument of error based on the jury considering summaries rather than Florez's original medical bills. For these reasons, we affirm the jury's award of past medical expenses as supported by the summaries provided by the parties.
¶ 37 Schindler next argues that there was insufficient evidence for the jury to award future medical expenses. However, Florez presented testimony from her treating physicians that her level of future care would be consistent with that rendered in the year or two prior to trial. Florez's medical bills from the prior two years were listed in the summaries considered by the jury. Together, the physicians' testimony and the *117 summaries allowed the jury to estimate Florez's future medical needs to the reasonable level of certainty required. See generally Sawyers v. FMA Leasing Co., 722 P.2d 773, 774 (Utah 1986) ("The fact of damages must be proven with reasonable certainty and the amount by a reasonable though not necessarily precise estimate."); Penelko, Inc. v. John Price Assocs., 642 P.2d 1229, 1235 (Utah 1982) ("The crucial question in awarding future damages involving a breach of lease which affects the long term value of the lease or the lessee's profit making potential is whether such damages can be ascertained with reasonable certainty.").
¶ 38 Schindler also refers us to Uintah Basin Medical Center v. Hardy, 2002 UT 92, 54 P.3d 1165, for the proposition that future medical expenses may not be awarded at all in the absence of evidence of a plaintiff's life expectancy. We disagree with Schindler's interpretation of Uintah Basin. In Uintah Basin, the supreme court observed,
While a district court has considerable experience in calculating future earnings, some basis must appear in the record for such an award. Some of the factors which district courts have employed to alleviate the speculative nature of future damage awards include an employee's duty to mitigate, "the availability of employment opportunities, the period within which one by reasonable efforts may be re-employed, the employee's work and life expectancy, the discount tables to determine the present value of future damages and other factors that are pertinent on prospective damage awards."
Id. ¶ 23 (quoting Shore v. Federal Express Corp., 777 F.2d 1155, 1160 (6th Cir.1985)). Thus, it appears that, under Uintah Basin, life expectancy is merely an appropriate factor to consider in awarding future damages.[8] Nothing in Uintah Basin suggests that the absence of life expectancy evidence completely precludes an award of future medical costs as damages, and we reject Schindler's argument that Florez's failure to present such evidence affects the award of future damages in this case.
¶ 39 Schindler has failed to demonstrate any evidentiary deficiency precluding the jury's award of past and future medical expenses. Accordingly, we affirm the district court's refusal to enter a directed verdict on these issues.

III. Schindler's Motion for a New Trial
¶ 40 Finally, Schindler argues that the district court erred in denying its motion for a new trial. Schindler's motion contained multiple arguments in favor of a new trial, but Schindler raises only two of those arguments on appeal.

A. Jury Instruction on Aggravation of Preexisting Conditions
¶ 41 First, Schindler argues that it is entitled to a new trial because the district court instructed the jury that Florez could recover damages if the elevator incident aggravated Florez's preexisting conditions rather than causing them outright. Schindler argues that Florez did not plead an aggravation theory in her complaint, nor did she move to amend the pleadings to conform to the evidence. See generally Utah R. Civ. P. 15(b) (governing amendment of pleadings to conform with evidence). Schindler also argues that the aggravation instruction given by the district court is not contained in the Model Utah Jury Instructions (MUJI) and that it misstates the law.
¶ 42 We see no error in the district court's instructing the jury on the aggravation of preexisting conditions. Although Schindler is correct that Florez did not specifically plead an aggravation theory, Schindler *118 injected the issue into the litigation by asserting that Florez's injuries, and particularly her BPPV, were preexisting. "When issues not raised by the pleading[s] are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Id. (emphasis added). "Implied consent may be found where one party raises an issue material to the other party's case, or where evidence is introduced without objection." General Ins. Co. v. Carnicero Dynasty Corp., 545 P.2d 502, 506 (Utah 1976); see also Hill v. Estate of Allred, 2009 UT 28, ¶ 48, 216 P.3d 929 (discussing implied consent). Here, Schindler both raised aggravation as a form of defense against Florez's claim and produced evidence of the preexisting nature of Florez's BPPV. Under these circumstances, the issue was tried by the implied consent of the parties and no amendment of either Florez's or Schindler's pleadings was required. See Utah R. Civ. P. 15(b) ("Such amendments of the pleadings as may be necessary to cause them to conform to the evidence and to raise [issues tried by implied consent] may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues."); General Ins. Co., 545 P.2d at 506 ("Significantly, the first part of Rule 15(b) ... provides that issues tried by express or implied consent shall be treated as if raised in the pleadings. Even failure to amend does not affect the result of the trial of these issues." (emphasis and footnote omitted)).
¶ 43 In regards to the correctness of the aggravation instruction, the substance of the instruction appears to have been taken verbatim from the MUJI's second edition, or MUJI 2d. See MUJI 2d CV2018 (Utah State Bar 2010), available at http://www.utcourts. gov/resources/muji (addressing damages for aggravation of symptomatic preexisting conditions). This does not in and of itself establish the correctness of the instruction, as "`[t]he MUJI are merely advisory and do not necessarily represent correct statements of Utah law.'" Clayton v. Ford Motor Co., 2009 UT App 154, ¶ 31, 214 P.3d 865 (quoting Jones v. Cyprus Plateau Mining Corp., 944 P.2d 357, 359 (Utah 1997)), cert. denied, 221 P.3d 837 (Utah 2009). However, in this case, the model instruction and the instruction given by the district court do accurately represent Utah law on the availability and apportionment of damages in aggravation cases. See, e.g., Tingey v. Christensen, 1999 UT 68, ¶ 15, 987 P.2d 588 ("We hold that if the jury can find a reasonable basis for apportioning damages between a preexisting condition and a subsequent tort, it should do so; however, if the jury finds it impossible to apportion damages, it should find that the tortfeasor is liable for the entire amount of damages.").
¶ 44 The parties tried the aggravation issue by implied consent, and the district court's instruction on damages relating to aggravation was a correct statement of the law. Accordingly, Schindler is not entitled to a new trial as a result of the aggravation instruction.

B. Florez's Opening and Closing Arguments
¶ 45 Schindler also argues that it is entitled to a new trial because the jury's verdict resulted from improper statements by Florez's counsel during opening and closing arguments. "The determination of whether remarks made during [opening or] closing argument[s] improperly influenced the verdict is within the sound discretion of the trial court." Green v. Louder, 2001 UT 62, ¶ 35, 29 P.3d 638. "Therefore, when improper [opening or] closing arguments are given, reversal is only warranted if this court concludes that absent the improper argument, there was a reasonable likelihood of a more favorable outcome for the [complaining party]." Id.
¶ 46 Here, Schindler complains about a multitude of allegedly improper statements occurring during Florez's opening and closing arguments. Responding to Schindler's arguments for a new trial, the district court ruled,
Finally, this was a hard fought, hotly contested, jury trial. Emotions did run high. A lot was at stake. Although the Court does not completely condone some of the comments made by [Florez's] attorney during closing argument, taken as a whole *119 and in context, those comments did not rise to the level of invoking the passion and prejudice of the jury. The jur[y]'s verdict appears well thought out, rational, and not the result of passion or prejudice. It was not a "runaway" jury. It was not an excessive verdict. The verdict was well within the discretion and prerogative of the jury.
The district court's ruling reflects its discretionary decision that Florez's counsel's comments were, by and large, not improper in the context in which they were made. More importantly, the district court ruled that the jury's verdict was "well thought out, rational, and not the result of passion or prejudice."
¶ 47 We are hesitant to second guess the discretion of the district court based on a cold reading of the trial transcript when the district court observed the entire trial, heard the tone and tenor of the arguing attorneys, and witnessed the jury's apparent reaction to opening and closing arguments. The supreme court has stated,
We are able to assess only the words as they appear in the record. The trial judge, on the other hand, was able to note other relevant factors such as counsel's gestures, inflection, and expressions, as well as the jury's reaction.... Trial courts are in a much better position than are appellate courts to assess the overall effect of attorney misconduct at trial.
Donohue v. Intermountain Health Care, Inc., 748 P.2d 1067, 1068 (Utah 1987). Although various aspects of Florez's counsel's opening and closing arguments may indeed be subject to criticism, Schindler has failed to establish that the district court exceeded its discretion in determining that any improper comments failed to influence the jury's verdict. Accordingly, we affirm the district court's denial of Schindler's motion for a new trial on this issue.

CONCLUSION
¶ 48 Schindler has failed to demonstrate that the district court erred in its various rulings relating to the causation of Florez's injuries. Similarly, Schindler has demonstrated no error in the jury's award of medical expenses or the district court's denial of Schindler's motion for a new trial. Accordingly, we affirm the district court's judgment in favor of Florez.
¶ 49 WE CONCUR: GREGORY K. ORME and J. FREDERIC VOROS JR., Judges.
NOTES
[1] Although Florez claimed other minor injuries and damages resulting from the elevator incident, this appeal largely involves Florez's BPPV, which appears to have constituted Florez's major permanent injury from the incident.
[2] The district court also denied a motion by Schindler seeking to have certain statements in an affidavit by Florez stricken as impermissible lay opinion as to the medical causation of her BPPV.
[3] In his deposition, Dr. Morgan testified in regards to the causation of Florez's BPPV as follows:

Q: .... Let's go back to your impressions the section titled "Impressions" in your report. Number two, "... [BPPV] as related to the elevator accident," what did you mean by the term "as related to"?
A: I felt that without any prior history of dizziness in reviewing the records, that it wasthat it wasthat was causation related to the elevator accident.
Q: So just to clarify, because you didn't see any existingany prior history of dizziness, you concluded, based on this accident, that the accident must have caused the vertigo; is that correct?
A: That was my causation, correct.
[4] For example, in discussing Schindler's later motion for directed verdict, the district court stated, addressing Schindler's counsel:

The one disagreement that you and I have always had ... is the interpretation of the one thing, the one report that was submitted under [r]ule 26 going to causation. I read that differently than you do.... I think what the doctor has said is these things occurred, these were the result of the elevator accident.... You read that differently and I respect that and you and I have just had that disagreement. That's my reading of his report, these occurred, they weren't serious, I don't award a permanent thing but they should be awarded to them and I think he testified into that and I think his report supports that.
We also note that Dr. Morgan testified in his deposition that he had intended the language in his report to state an opinion on causation.
[5] We note that the district court heard arguments and ruled on Schindler's motion in limine at a pretrial conference on September 5, 2008. Schindler has not provided a transcript of that conference in the appellate record, and thus, the exact grounds for the district court's ruling are unclear.
[6] In describing his causation analysis during his deposition, Dr. Morgan answered affirmatively when asked, "So just to clarify, because you didn't see any existingany prior history of dizziness, you concluded, based on this accident, that the accident must have caused the vertigo; is that correct?"
[7] The preliminary statement of facts in Schindler's brief does identify several instances in which Florez's treating physicians testified that Florez's rib injuries were consistent with her fall, that Florez's neck and back pain could have flared up because of trauma from the fall, and that BPPV can be caused by trauma. However, with regard to each of these statements, Schindler either failed to object to the testimony at trial or fails to address on appeal the reasons for the district court overruling a specific objection. Accordingly, even if we were to construe Schindler's brief as satisfying the requirement that citations to the record be contained in the argument, Schindler's arguments are either unpreserved or remain inadequately briefed due to Schindler's failure to address the specific district court rulings on Schindler's objections.
[8] Schindler also cites to two federal cases in support of its argument that future damages cannot be awarded without evidence of life expectancy. See Johnson v. Michelin Tire Corp., 812 F.2d 200 (5th Cir.1987); Estate of Zarif v. Korean Airlines Co., 836 F.Supp. 1340 (E.D.Mich.1993). However, neither case supports Schindler's proposition. See Johnson, 812 F.2d at 210 (remanding a clearly excessive future damages award for new trial because the absence of record evidence of the plaintiff's life expectancy or the proper method of discounting the award precluded remittitur); Estate of Zarif, 836 F.Supp. at 1351 (listing decedent's work expectancy as a factor to be considered in an award of lost services damages in a wrongful death action).