IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Michael and Lana Hone, | ) | OPINION |
| | ) | |
| Plaintiffs and Appellees, | ) | Case No. 20110256-CA |
| | ) | |
| v. | ) | |
| | ) | F I L E D |
| Advanced Shoring & Underpinning, | ) | (November 23, 2012) |
| Inc., | ) | |
| | ) | 2012 UT App 327 |
| Defendant and Appellant. | ) | |

-----

Fifth District, St. George Department, 080501595
The Honorable James L. Shumate

Attorneys:    Scott T. Evans and Gabriel K. White, Salt Lake City, for Appellants
              Justin D. Heideman and Travis Larsen, Provo, for Appellees

-----

Before Judges McHugh, Voros, and Roth.

ROTH, Judge:

¶1    Advanced Shoring & Underpinning, Inc. (Advanced Shoring) appeals from the trial court's denial of its two motions for summary judgment and motion for directed verdict. Specifically, Advanced Shoring asserts that the court erred as a matter of law in denying its first motion for summary judgment because Michael and Lana Hone did not establish that there was an issue of fact regarding whether Advanced Shoring's purported warranty was enforceable. It also challenges the denial of its second motion for summary judgment and its motion for directed verdict on the basis that the Hones did not present any expert testimony to establish that Advanced Shoring's geotechnical

work caused the Hones' house to subside. Finally, Advanced Shoring contends that summary judgment was inappropriately denied because the Hones lost the home to foreclosure through no fault of Advanced Shoring. We conclude that Advanced Shoring's claims that the denials of summary judgment were inappropriate are not subject to review, and we affirm the trial court's denial of the motion for directed verdict.

BACKGROUND

¶2     In June 2004, the Hones built a home in La Verkin, Utah. Less than two months later, they noticed that their home was subsiding into the soil upon which it was built. As a result, the Hones sued the contractor who had constructed the home and eventually settled the case. Following the settlement, the Hones hired Advanced Shoring to address the subsidence problem. In early 2006, Advanced Shoring began work to install fourteen helical piers and forty-five grouted columns beneath the house in an effort to shore it up, or underpin it,[1] against future sinking. By late March, however, the company recognized that its proposed solution was inadequate to prevent further settling. As a result, Kevin Garside, Advanced Shoring's project manager, called the Hones to inform them that additional underpinning work was needed. According to Lana Hone, Garside told her, "'I won't guarantee it unless I get $10,000 more.'"[2] The Hones agreed and paid Advanced Shoring an additional $8,743 (the additional payment) to carry out the recommended work, which included installing one more helical pier and thirteen additional grouted columns.[3] After the work was done, the

---

[1]In construction, underpin means "to prop up or support from below; strengthen, as by reinforcing a foundation" or "to replace or strengthen the foundation of (a building or the like)." Random House, Inc., *Dictionary.com Unabridged*, *available at* www.dictionary.reference.com/browse/underpin (last visited November 6, 2012).

[2]Garside testified that he was responsible for "determining which projects would receive guarantees," and Advanced Shoring does not dispute that he had such authority.

[3]Advanced Shoring does not dispute that the Hones' $8,743 payment satisfied the
(continued...)

home continued to settle, and Advanced Shoring carried out further repairs in December 2006 and June 2007 without success. After the final unsuccessful attempt to prevent their house from sinking, the Hones filed this case, asserting, among other things, claims for breach of contract and breach of warranty on the ground that Advanced Shoring had promised to repair the home in a manner that would prevent further subsidence for at least ten years. While the action was pending, the Hones "had to vacate the home because it was not safe" and Michael Hone suffered from unrelated medical issues that prevented him from working. When the Hones could no longer afford to pay for both the mortgage on the home and the rent for another place to live, they defaulted on their mortgage payments. They later filed for Chapter 7 bankruptcy and subsequently lost the home to foreclosure.

¶3     Advanced Shoring filed two motions for summary judgment seeking to dispose of the Hones' breach of contract and breach of warranty claims. Because the nature of the summary judgment motions and the trial court's basis for denying them is relevant to appellate jurisdiction, we describe Advanced Shoring's arguments and the Hones' responses in some detail. The first motion asserted that the Hones could not recover for breach of warranty because they had identified no express warranty within the parties' written contract and their oral warranty claim relied on a single piece of evidence—"a telephone conversation between an employee of Advanced Shoring and [the Hones,]" in which "Advanced Shoring allegedly indicated that unless . . . additional work was performed, Advanced Shoring's work on the [home] could not be guaranteed"—that was too indefinite as a matter of law to create an enforceable warranty. In their response, the Hones emphasized the oral statement of warranty by Garside: "'I won't guarantee it unless I get $10,000 more.'" According to them, these words amounted to a valid express warranty and raised an issue of material fact about the warranty's scope. The Hones attached excerpts from their own depositions that explained why they understood Garside's statement to be a warranty. The trial court denied Advanced Shoring's first motion, "find[ing] that certain areas of material fact, particularly those relating to the alleged 'warranty,' remain in dispute."

---

[3](...continued)
demand for "'$10,000 more.'" We primarily refer to the payment as the additional payment but sometimes call it the $10,000 payment.

¶4     Advanced Shoring filed its second motion for summary judgment after the deadline had passed for expert witness disclosure and the Hones had failed to designate an expert witness. Advanced Shoring contended that the Hones could not prove their breach of contract or breach of warranty claims without expert testimony because, in order for the court to determine that Advanced Shoring breached its contractual or warranty obligations and caused damages, the Hones would have to prove that Advanced Shoring failed to correctly conduct a "complicated [geotechnical] analysis of the soil beneath the Property" before completing the underpinning work. Advanced Shoring also argued that, even if the claims could be proved without an expert, the Hones were not entitled to damages because they no longer owned the home and their loss of the home was unrelated to Advanced Shoring's performance.[4] The Hones responded by asserting that expert testimony was not necessary to show breach or causation because "the terms of the warranty were simple and understood by both parties[ to mean] that [Advanced Shoring] would perform work to stop the house from sinking," yet the house continued to sink. In addition, the Hones disputed Advanced Shoring's contention that their loss of the home prevented them from recovering damages, noting that they incurred significant damages due to the continued subsidence of their home and that the cause of losing the home was a factual issue that needed to be developed at trial. The trial court denied Advanced Shoring's second motion for summary judgment in a minute entry without explanation.

¶5     The case then proceeded to a four-day bench trial. Following the Hones' case-in-chief, Advanced Shoring moved for directed verdict on the ground that the Hones had not presented expert testimony that it had caused them any damage.[5] The trial court denied the motion without elaboration and eventually decided the breach of contract

---

[4]In the trial court, Advanced Shoring presented a third basis for summary judgment, contending that an expert was needed to show that the Hones' claimed damages for the loss in value of the home resulted from Advanced Shoring's performance rather than from a contemporaneous decline in the real estate market. Advanced Shoring does not appeal the denial of summary judgment on that basis, however, and we therefore do not consider it.

[5]Advanced Shoring actually asserted several grounds for directed verdict, all of which were rejected. On appeal, it contends only that the trial court erred in denying its request for directed verdict on the basis of a lack of essential expert testimony.

20110256-CA                          4

and breach of warranty claims in favor of the Hones. The court entered judgment against Advanced Shoring in the amount of $289,065.54. Advanced Shoring now appeals the trial court's denial of the two motions for summary judgment and the motion for directed verdict.

## ISSUES AND STANDARDS OF REVIEW

¶6     Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "Conversely, if there is any dispute as to any issue, material to the settlement of the controversy, the summary judgment should not be granted." *Holbrook Co. v. Adams*, 542 P.2d 191, 193 (Utah 1975). Following a trial, however, "[a]ppellate courts may review the denial of a pretrial summary judgment motion [only] if the motion was decided on purely legal grounds." *Normandeau v. Hanson Equip., Inc.*, 2009 UT 44, ¶ 7, 215 P.3d 152. If there are material factual issues in dispute either at the time of the motion hearing or by the time of trial, the denial of the motion cannot be reviewed on appeal. *See id.* ¶ 15.

¶7     Advanced Shoring also challenges the denial of its motion for directed verdict.

> [W]e review the denial of a motion for directed verdict by examining the evidence and all reasonable inferences that may fairly be drawn therefrom in the light most favorable to the party moved against, and will sustain the denial if reasonable minds could disagree with the ground asserted for directing a verdict.

*Florez v. Schindler Elevator Corp.*, 2010 UT App 254, ¶ 8, 240 P.3d 107 (citation and internal quotation marks omitted).

ANALYSIS

I. The First Summary Judgment—The Warranty Issue

A. Whether a Denial of Summary Judgment Is Reviewable Depends on the Nature of the Issue on Which the Decision Turned.

¶8 In *Normandeau v. Hanson Equipment, Inc.*, 2009 UT 44, 215 P.3d 152, the Utah Supreme Court held that the *denial* of summary judgment is not subject to review once a trial has taken place unless, in deciding the summary judgment motion, "the district court makes a legal ruling based on undisputed facts that do not materially change at trial." *Id.* ¶ 9. In *Normandeau*, the heirs of a man killed in a tow truck accident brought a negligence action against the shop that had repaired the truck's hydraulic hose shortly before the accident. *Id.* ¶ 2. The repair shop filed a motion for summary judgment, in which it asserted both that it had no legal duty to its customer and that its repair work was not the proximate cause of the accident. *Id.* ¶ 3. The parties stipulated that duty was a legal question to be resolved by the court. *Id.* The district court denied the motion, however, on the issue of foreseeability because it determined that there were factual questions regarding whether "the faulty repair was a foreseeable cause of Mr. Normandeau's death." *Id.* The court did not clarify whether its ruling on foreseeability went to both duty and proximate cause or just proximate cause, but the parties understood the ruling to apply only to the causation question and did not present evidence on the issue of duty at trial. *Id.* The jury resolved the suit in favor of the heirs. *Id.* The repair shop appealed, claiming that the court should have granted summary judgment as a matter of law on the issue of duty. *Id.* ¶ 4.

¶9 The supreme court noted that Utah case law was inconsistent as to when a denial of summary judgment may be reviewed, *id.* ¶ 7, and proceeded to establish a uniform rule. In doing so, it recognized "[a] critical distinction . . . between summary judgment motions raising the sufficiency of the evidence to create a fact question for the jury and those raising a question of law that the court must decide." *Id.* ¶ 11 (alteration in original) (citation and internal quotation marks omitted).

> We therefore hold that when a court denies a motion for summary judgment on a purely legal basis, that is where the court denies the motion based on the undisputed facts,

rather than because of the existence of a disputed material fact, the party denied summary judgment may challenge that denial on appeal. . . . On the other hand, when disputed facts bear on the decision or when new material facts emerge at trial that change the nature of the legal determination, parties then have an obligation to reraise the issue at trial in order to preserve it for appeal.

*Id.* ¶ 15. The court further explained that a denial of summary judgment is not reviewable, even if summary judgment ought to have been granted at the motion stage, because the party opposing the motion had failed to establish an issue of material fact, when "by trial the evidence produced by the opposing party was sufficient to be presented to the jury" or "by trial the evidence had been supplemented or changed in some manner favorable to the party who opposed summary judgment." *Id.* ¶ 11 (citation and internal quotation marks omitted).[6] We must now examine the case at

---

[6]The approach taken in *Normandeau* is followed in a sizeable minority of jurisdictions that have considered the issue. *See, e.g., Wilson v. Union Pac. R.R. Co.*, 56 F.3d 1226, 1229 (10th Cir. 1995); *Fleitz v. van Westrienen*, 560 P.2d 430, 432–33 (Ariz. Ct. App. 1977); *Regency Commercial Assocs., LLC v. Lopax, Inc.*, 869 N.E.2d 310, 320 (Ill. App. Ct. 2007); *Gallegos v. State Bd. of Educ.*, 940 P.2d 468, 472 (N.M. Ct. App. 1997); *Tobin v. Fish*, No. 64977-9-I, 2011 WL 1549772, at *1 n.3 (Wash. Ct. App. Apr. 25, 2011). A majority of jurisdictions, however, have adopted a bright line rule that simply precludes an appellate court from reviewing the denial of a pretrial motion for summary judgment after a trial on the merits. *See, e.g., Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1284–86 (11th Cir. 2001) (citing the majority of federal circuits that have adopted this rule and then adopting it for the Eleventh Circuit); *Morgan v. American Univ.*, 534 A.2d 323, 326–27 (D.C. Cir. 1987) (adopting the rule with some limited exceptions after noting that "a majority of jurisdictions that have addressed the question have ruled that . . . a [pretrial] denial [of summary judgment] is not reviewable"); *Feiger, Collison & Killmer v. Jones*, 926 P.2d 1244, 1250 (Colo. 1996) (en banc); *Phillips v. Abel*, 233 S.E.2d 384, 385 (Ga. Ct. App. 1977); *Garcia v. Windley*, 164 P.3d 819, 822 (Idaho 2007); *Kiesau v. Bantz*, 686 N.W.2d 164, 174 (Iowa 2004); *Skowronski v. Sachs*, 818 N.E.2d 635, 638 n.5 (Mass. Ct. App. 2004); *Cannon v. Day*, 598 S.E.2d 207, 210 (N.C. Ct. App. 2004); *Del Rossi v. Doenz*, 912 P.2d 1116, 1118–19 (Wyo. 1996). The majority includes at least one of the

(continued...)

[6](...continued)
jurisdictions on whose jurisprudence our supreme court relied in *Normandeau* to differentiate summary judgments denied on legal grounds from those denied on a factual basis. *See Normandeau v. Hanson Equip., Inc.*, 2009 UT 44, ¶ 11, 215 P.3d 152 (citing *Holley v. Northrop Worldwide Aircraft Servs., Inc.*, 835 F.2d 1375 (11th Cir. 1988), an Eleventh Circuit decision from 1988 in which the federal court permitted review of legal denials of summary judgment but not factual denials). *But see Lind*, 254 F.3d at 1285–86 (adopting for the Eleventh Circuit, in 2001, the majority rule that it "will not review the pretrial denial of a motion for summary judgment after a full trial and judgment on the merits"). Those courts have reasoned that while "'the party moving for summary judgment suffers from an injustice if his motion is improperly denied,'" particularly if "'the verdict goes against him,'" the greater injustice is "'to deprive a party of a jury verdict after the evidence was fully presented, on the basis of an appellate court's review of whether the pleadings and affidavits at the time of the summary judgment motion demonstrated the need for a trial.'" *See Lind*, 254 F.3d at 1285 (quoting *Locricchio v. Legal Servs. Corp.*, 833 F.2d 1352, 1359 (9th Cir. 1987)).

A bright line rule has obvious appeal. The main purpose of summary judgment is to avoid the investment of party and judicial resources in a trial that is not legally necessary. *See Amjacs Interwest, Inc. v. Design Assocs.*, 635 P.2d 53, 54 (Utah 1981). But there is no commensurate benefit from permitting appellate review after a full trial on the merits, especially where the party who lost its motion for summary judgment has other more immediate remedies available, such as a petition for interlocutory review or a motion for judgment as a matter of law at trial (e.g., a directed verdict or for judgment notwithstanding the verdict) when the applicability of a decisive legal principle under the circumstances might become more apparent to the district court. *See Lind*, 254 F.3d at 1285. Furthermore, as the *Normandeau* court recognized,

> district courts are not required to specify the grounds on which they deny a motion for summary judgment, [which] may [make it] . . . difficult in some cases to ascertain whether the court denied a summary judgment motion based on the existence of a disputed material fact or as a result of a purely legal ruling.

2009 UT 44, ¶ 9. Indeed, the difficulty of applying the *Normandeau* approach on appeal is illustrated by the case before us. And the benefits of what may be, in some cases, a

(continued...)

hand to determine whether appellate review of the trial court's denial of summary judgment is appropriate under the standard articulated in *Normandeau*.

B. The Legal Determination that Advanced Shoring Had Given an Enforceable Oral Warranty Depended on Resolution of Disputed Facts at Trial, Thus Precluding Appellate Review of the Denial of Summary Judgment.

1. Whether an Enforceable Warranty Exists Can Involve Questions of Fact.

¶10   According to Advanced Shoring, the existence of a warranty is purely a question of law that should have been decided on summary judgment. It cites the general principle that an enforceable contract results from "a meeting of the minds," which means that the parties have "arrive[d] at an agreement as to all of the elements which are essential to [the] . . . contract." *Harris v. Albrecht*, 2004 UT 13, ¶ 10, 86 P.3d 728 (citation and internal quotation marks omitted); *accord Valcarce v. Bitters*, 362 P.2d 427, 428 (Utah 1961). Therefore, "if the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." *Nielsen v. Gold's Gym*, 2003 UT 37, ¶ 12, 78 P.3d 600 (citation and internal quotation marks omitted). Specifically, Advanced Shoring contends that the essential terms of any purported guarantee to the Hones were simply too uncertain to amount to an

---

[6](...continued)
complex approach to the determination of reviewability are difficult to discern, perhaps accounting for the majority of jurisdictions that have adopted the bright line rule that simply precludes appellate review of summary judgment denials that have been followed by a trial on the merits.

Despite these difficulties, the scope of appellate review of summary judgment denials continues to receive ongoing consideration. Some courts have, after adopting one approach, revisited this issue and shifted to the other. *See, e.g., United States v. Medshares Mgmt. Grp., Inc.*, 400 F.3d 428, 441 (6th Cir. 2005) (shifting from majority rule to minority rule because "the interests underlying the [majority] rule are not implicated" "where the denial of summary judgment was based on a question of law"); *Lind*, 254 F.3d at 1285–86 (adopting majority rule after first using the more narrow approach adopted by the *Normandeau* court). In an appropriate case, the Utah Supreme Court may also find it worthwhile to revisit the benefits and burdens of the *Normandeau* approach.

enforceable agreement and it was entitled to summary judgment because "whether a contract . . . exists is a matter of law," *Harris*, 2004 UT 13, ¶ 9.

¶11     Advanced Shoring's discussion of basic contract principles is unexceptionable. Nevertheless, "[t]he issue of whether a contract exists may present both questions of law and fact, depending on the nature of the claims raised." *Cal Wadsworth Constr. v. City of St. George*, 865 P.2d 1373, 1375 (Utah Ct. App. 1993) (citing *O'Hara v. Hall*, 628 P.2d 1289, 1290–91 (Utah 1981)), *aff'd*, 898 P.2d 1372 (Utah 1995). Indeed, the supreme court has noted that the "existence of a contract is generally [a] conclusion of law, unless there is [a] material dispute of fact, which presents [a] subsidiary question of fact." *Id.* (citing *O'Hara*, 628 P.2d at 1290–91). Thus, in some cases, the legal question of whether a valid oral warranty exists may depend on the resolution of issues of fact. This appears to be such a case.

¶12     To establish an express warranty, a plaintiff must demonstrate "promises by the warrantor guaranteeing or assuring a specific result." *SME Indus. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶ 18, 28 P.3d 669.

> A warranty is an assurance by one party to a contract of the existence of a fact upon which the other party may rely. It is intended to relieve the promisee of any duty to ascertain the fact for himself, and it amounts to a promise to answer in damages for any injury proximately caused if the fact warranted proves untrue.

*Groen v. Tri-O-Inc.*, 667 P.2d 598, 604 (Utah 1983). "Where . . . there is conflicting evidence, . . . whether [one party's] statements constituted an *oral* express warranty [is a] question[] of fact that [is] properly submitted to the [factfinder]." *Id.* at 606. In this regard, "[a]n express warranty does not require any particular words," just "direct and positive affirmation of fact . . . made by one party to the contract that induces the other party to act in reliance thereon." *Id.* And when the parties disagree about their intentions regarding the terms of their agreement, the existence of a valid contract depends on evidence outside the parties' words of agreement. *See LD III, LLC v. BBRD, LC*, 2009 UT App 301, ¶ 13, 221 P.3d 867 ("Whether the parties had a meeting of the minds sufficient to create 'a binding contract is . . . an issue of fact.'" (omission in original) (quoting *O'Hara*, 628 P.2d at 1291)); *Records v. Briggs*, 887 P.2d 864, 871 (Utah

Ct. App. 1994) (recognizing that "when contract interpretation will be determined by extrinsic evidence of intent, it becomes a question of fact"). Then "[i]t [becomes] the duty of the [finder of fact] in its interpretation of th[e] oral agreement to ascertain the meaning to be given to the words and manifestations of the parties and thus determine their intention." *Rex T. Fuhriman, Inc. v. Jarrell*, 445 P.2d 136, 137 (Utah 1968).

¶13    This is the position taken by the Hones, who argue that Advanced Shoring's statement was explicitly a "guarantee" by its terms and that any uncertainty amounted to a question of fact about its scope and did not undercut its validity as an enforceable promise. Advanced Shoring claims, however, that the use of the word "guarantee" does not alone establish a contract if the minds of the parties have not met on the scope of that guarantee. It contends that because the "guarantee" could mean either that Advanced Shoring would perform in a workmanlike manner in installing the additional helical pier and grouted columns or that its work would achieve the result desired by the Hones, i.e., that their home would stop sinking further into the ground, the terms of the warranty were simply too uncertain to be legally enforceable. The summary judgment ruling, however, stated only that "the Court finds that certain areas of material fact, particularly those relating to the alleged 'warranty,' remain in dispute." It is not possible to determine from this language whether the court accepted the Hones' view that there was an enforceable guarantee whose scope required resolution of questions of fact or whether it believed there were fact questions that must be resolved before it could determine as a matter of law whether there was an enforceable oral warranty in the first place, whatever its scope.

¶14    In any event, the trial court denied the motion because of the existence of disputed material facts. If the court's ruling was correct, then it is indisputable that the denial cannot be reviewed. *See Normandeau v. Hanson Equip., Inc.*, 2009 UT 44, ¶ 15, 215 P.3d 152 (holding that the denial of a summary judgment motion may be challenged in a posttrial appeal "when a court denies a motion for summary judgment on a purely legal basis, that is where the court denies the motion based on the undisputed facts, rather than because of the existence of a disputed material fact"). Advanced Shoring's contention, however, is that the facts were *undisputed* at summary judgment because it conceded for purposes of the motion that Garside said, "'I won't guarantee it unless I get $10,000 more.'" Even assuming for purposes of our analysis that Advanced Shoring is correct, and that summary judgment should have been granted based on the factual record at the time of the motion, we must nevertheless determine whether the existence

of a warranty was ultimately fact-dependent and if "by trial the evidence had been supplemented or changed in some manner favorable to the party who opposed summary judgment." *See id.* ¶¶ 11, 9, 24. We therefore compare the evidence presented in connection with the summary judgment motion with the evidence adduced at trial in order to determine whether the summary judgment decision is reviewable.

> 2. The Hones Presented Additional Evidence at Trial To Support Their Position that Advanced Shoring Agreed To Provide Them with a Guarantee of Result, Thus Precluding Review of the Denial of Summary Judgment.

¶15     In their opposition to summary judgment, the Hones presented some evidence to support their position that there was in fact an enforceable warranty of result. The Hones attached excerpts from their deposition testimonies, in which they identified the terms of the agreement. According to Lana Hone, in telling the Hones that it needed "'$10,000 more'" to "guarantee" the house, "Advanced Shoring promised that [it] would stop the house from sinking" if the Hones made the additional payment. She understood this to mean "it's fixed, it's repaired, we won't have any more problems with it." She further explained that in the event that the house did continue to settle, Advanced Shoring promised that it "would come back and fix it." Michael Hone testified that he thought the parties' original agreement included a warranty but, based on Garside's statement, the warranty would not be effective "if they didn't put the extra pier[ and columns] in." He further testified that he understood the warranty would be in force for ten years.

¶16     In the course of the trial, the Hones presented additional evidence favorable to their position. For example, they each testified that they originally negotiated a contract with Advanced Shoring that included a warranty for ten years. They explained that when they asked their attorney to approach various companies about completing the underpinning work, they insisted that the work be guaranteed and that, in response, Advanced Shoring had offered a ten-year guarantee because that time period was common in the industry. Lana Hone testified that her understanding was bolstered by an Advanced Shoring brochure advertising an "exclusive owner transferrable warranty" on the "provi[sion of] the service needed to support and secure the foundation beneath [the] home." The Hones further explained that after Advanced Shoring began work, the company realized that to adequately stabilize the foundation so as to be able to provide the promised warranty, it needed to perform additional

work, i.e., the installation of one more helical pier and thirteen more grouted columns, at an additional cost of $10,000. They understood Garside's statement that the work would not be guaranteed unless Advanced Shoring was paid an additional $10,000 to mean that upon the Hones' satisfaction of Advanced Shoring's condition—i.e., payment of $10,000 for the installation of the additional helical pier and thirteen grouted columns—the company would honor the original warranty.

¶17    The Hones also testified that after they made the additional payment and Advanced Shoring completed the additional underpinning work, the house continued to sink. They immediately called Advanced Shoring to report problems that resulted from the sinking, including their inability to fully close the front door or to open the back door, the development of more large cracks through which insects, lizards, and snakes crawled into the home, and the shattering of their bedroom window. Advanced Shoring responded by returning to the site twice more, in December 2006 and June 2007, to perform additional work in an attempt to prevent further subsidence. On neither occasion did Advanced Shoring send the Hones an invoice or request additional payment for the services rendered.

¶18    Michael Hone further testified that when the president of Advanced Shoring, Perole Danfors, first visited the house in the course of the final attempt to repair it in June 2007, Danfors expressed surprise at the extent of the damage and stated that he could not "'afford to fix this'" and would "'have to turn it over to [his] insurance company.'" The Hones also submitted a July 2007 letter from Danfors, in which he laid out a plan for completing additional work to control the subsidence and to repair damage to the house. The letter informed the Hones that Danfors "ha[d] contacted [his] insurance company for help" "with the[] costs" of the repairs and contained no suggestion that the Hones were responsible to cover any costs. Michael Hone also reported that in a subsequent conversation, Danfors expressed regret at ever having given a warranty, lamenting that the insurance company told him he "'should not have guaranteed th[e work].'" Danfors denied that Advanced Shoring ever offered the Hones a warranty, but when asked whether he told Michael Hone that he "should not have guaranteed th[e work]," he did not contradict Michael Hone's testimony, stating simply, "I don't recall." In total, Advanced Shoring performed approximately $40,000 of

work beyond what it had agreed to do for the $10,000 additional payment, none of which was ever billed to the Hones.[7]

¶19    Advanced Shoring countered with evidence to support its position that any guarantee it made was only intended to assure the Hones that the work would be performed according to industry standard. When Garside took the stand, he explained that he did not "recall" the Hones ever asking for a guarantee and denied making a demand for an additional $10,000 in exchange for a guarantee. Danfors testified that the additional payment was to cover the cost of extra repairs, the need for which became apparent after the underpinning work began, and would not include a guarantee of any result. Danfors also stated that although Advanced Shoring does offer warranties, one was not offered to the Hones because with regard to soil problems, "there's always something that can happen—acts of God and so forth—out of my control and my knowledge, so I couldn't honor a 100 percent guarantee that it would never sink again." He explained that had Advanced Shoring given the Hones a warranty, it would have provided written documentation with the "address of the place." Instead, he testified, Advanced Shoring only promised to perform its work to industry standard and that the work was, in fact, completed in such a manner. Danfors admitted, however, that Advanced Shoring performed approximately $40,000 more work free of charge after the additional payment and after the installation of the additional helical pier and grouted columns did not solve the sinking problem. Advanced Shoring's explanation for incurring these expenditures was that it "take[s] care of [its] customers."

¶20    Thus, even if the facts the Hones presented in opposition to Advanced Shoring's motion for summary judgment on the warranty issue were legally insufficient to raise a question of fact in the context of the motion itself, a question we do not reach, the trial court's decision to deny that motion is not reviewable, because "by trial the evidence

---

[7]Further evidence that the trial court could have interpreted to support the Hones' position that there was a guarantee to prevent the house from further subsidence included a March 2007 letter Advanced Shoring sent the Hones, indicating its wish to satisfy their concerns and setting forth a course of repair. The proposed repairs included cosmetic work to the interior of the house, a type of work that was not within the scope of Advanced Shoring's work under the original contract. Advanced Shoring also offered to cover the costs of a hotel while it completed the work on the interior of the home.

produced by the opposing party was sufficient to be presented to the [finder of fact]" or "had been supplemented or changed in some manner favorable to the party who opposed summary judgment."[8] *See Normandeau v. Hanson Equip., Inc.*, 2009 UT 44, ¶ 11, 215 P.3d 152. The trial court's decision to deny Advanced Shoring's first summary judgment motion is therefore not subject to appellate review.

## II. The Expert Witness Issue

¶21    In subsequent proceedings, Advanced Shoring pursued an alternative to the position it took in the first motion for summary judgment that no warranty existed at all, arguing that if there were a valid warranty, it was limited to a guarantee of workmanlike performance and included no promise that the house would not continue to subside for other reasons. Advanced Shoring thus contends that the Hones were required to present expert testimony to establish that Advanced Shoring breached such a warranty and that any breach caused their damages. The company raised this issue through a second summary judgment motion and a motion for directed verdict, both of which the trial court denied.[9]

A. The Second Summary Judgment Motion

¶22    The trial court denied Advanced Shoring's second motion for summary judgment in a brief minute entry that did not set out a basis for the decision. Other than the minute entry, the court did not issue a written decision, and Advanced Shoring has

---

[8]We note that Advanced Shoring has limited its appeal to the propriety of the trial court's denial of its two summary judgment motions and its motion for directed verdict. Other than its argument that damages should not have been awarded at all, Advanced Shoring has not contested the correctness of the court's final judgment, either by challenging the sufficiency of the evidence or otherwise. We therefore do not reach the issue of whether the evidence the Hones presented at trial was adequate to support the trial court's conclusion that Advanced Shoring provided the Hones with an enforceable warranty of result in exchange for the additional payment.

[9]The second motion for summary judgment also asserted that the Hones were not entitled to damages as a matter of law. We will address that issue in part III of this decision.

not provided a transcript of the summary judgment hearing. The parties agree, however, that the court determined that "the existence of unspecified material disputes of fact" precluded summary judgment. Advanced Shoring contends that the ruling was erroneous because the material facts were not in dispute and the court should have decided the matter in its favor on a purely legal basis. But as the *Normandeau* court pointed out, "when new material facts emerge at trial that change the nature of the legal determination" or "the evidence ha[s] been supplemented or changed in some manner favorable to the party who opposed summary judgment," the appellate courts "will not review the denial of a pretrial summary judgment motion." *Id.* ¶¶ 15, 11. Thus, even assuming for purposes of appeal that Advanced Shoring is correct that the only issue before the court on summary judgment presented a legal question because Advanced Shoring did not dispute the facts, we conclude that review of the denial of summary judgment is not available because additional material facts emerged at trial that were pertinent to the issue of whether there was an enforceable warranty, *see id.*

¶23     According to Advanced Shoring, because the case involved complex geotechnical work beyond the knowledge of an ordinary lay person, if the court decided there was a warranty, the Hones were required to designate an expert to establish the standard of workmanship, whether the standard was breached and, if there was a breach, whether the breach or other circumstances beyond Advanced Shoring's control caused the Hones' damage, i.e., the sinking of their house. The Hones responded that Advanced Shoring warranted that its work would prevent the house from subsiding further into the soil, not that the company would simply perform in a workmanlike manner. They contended that a lay person was capable of testifying that the house was continuing to sink and identifying the resulting damage to the house itself.

¶24     Whether the Hones needed an expert to make their case at trial thus depended on the nature of the warranty. If Advanced Shoring guaranteed only that it would perform the underpinning in a workmanlike manner in accordance with industry standard, then expert testimony would indeed be required. Under those circumstances, the Hones would need to establish the applicable standard for Advanced Shoring's work, how that work departed from those standards, and that the continued sinking of the house resulted from deficiencies in Advanced Shoring's performance rather than from unavoidable external causes such as soil conditions. However, because "a cause of action for breach of express warranty sounds in strict liability," if the warranty promised that Advanced Shoring's work would prevent further settling, the company

was "liable for breach of warranty despite [its] exercise of all reasonable or even all possible care." *See SME Indus. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶ 18, 28 P.3d 669 (citation and internal quotation marks omitted). In that case, expert testimony would be unnecessary because the only pertinent question was whether the company failed to remedy the problem, and the answer to that question required no special expertise. *See id.* ¶ 20 (stating that to recover on a breach of express warranty claim, a plaintiff must prove only the existence of a warranty and that the breach of that warranty was "the direct and proximate cause of the damage"). As the court decided at trial, the homeowners were capable of testifying from their own observations that after Advanced Shoring gave its guarantee and performed its work their house continued to settle, resulting in readily observable damage to the house itself.[10]

¶25    Because the existence and nature of the warranty depended on the resolution of underlying questions of fact, and the need for an expert depended on the nature of the warranty, the trial court's denial of summary judgment on the expert issue was ultimately based on facts in dispute regarding the warranty itself, the very issue addressed in Advanced Shoring's first motion for summary judgment. Thus, the conclusion we arrived at with regard to that issue applies equally here: appellate review of the trial court's decision is not available under the *Normandeau* analysis. *See Normandeau v. Hanson Equip., Inc.*, 2009 UT 44, ¶ 15, 215 P.3d 152.

B. The Directed Verdict Motion

¶26    Advanced Shoring also appeals the trial court's denial of its motion for directed verdict, which reasserted at trial the same argument the company had made in its second summary judgment motion regarding the Hones' failure to call an expert witness. As it did in the summary judgment motion, Advanced Shoring focused on the principle that "engineering issues of a technical nature are considered beyond the scope of common knowledge and require expert testimony" and contended that without expert testimony, the Hones could not "support[] their claim that Advanced Shoring performed its work improperly or that an act or omission by Advanced Shoring caused

---

[10]At trial, Advanced Shoring's attorney objected to the Hones testifying about the extent of the damage: "I believe as to determining where the sinking is occurring in the house calls for expert testimony." The court responded, "It does not, Counsel. That can be observed by an owner. It does not require anything other than lay testimony."

or contributed to [their] damages." We conclude that the trial court did not err in denying the motion for directed verdict.

¶27     Advanced Shoring's argument assumes that any warranty it may have provided amounts to no more than a warranty to perform in a workmanlike fashion according to industry standard. As discussed above, however, the Hones presented contrary evidence in support of their position that the warranty was a guarantee that their house would not continue to subside. *See supra* ¶¶ 15-18. Indeed, the trial court ultimately accepted the Hones' contention, concluding that Advanced Shoring guaranteed the result, not just the quality of its work. Advanced Shoring cannot now argue that the court erred in denying its motion based on the absence of expert testimony when the Hones presented a plausible theory of the case that did not require it. *See generally Florez v. Schindler Elevator Corp.*, 2010 UT App 254, ¶ 8, 240 P.3d 107 (observing that when reviewing the denial of a motion for directed verdict, we "examin[e] the evidence and all reasonable inferences that may fairly be drawn therefrom in the light most favorable to the party moved against, and will sustain the denial if reasonable minds could disagree with the ground asserted for directing a verdict" (citation and internal quotation marks omitted)). Accordingly, we conclude that the trial court acted appropriately in denying Advanced Shoring's motion for directed verdict.

¶28     In summary, because the Hones' need for an expert witness depended on the nature of the warranty, a factual issue that was developed further at trial, we are unable to review the denial of summary judgment. Similarly, with regard to the motion for directed verdict, the Hones presented evidence at trial to support a plausible theory that Advanced Shoring guaranteed that the house would not further subside into the soil, not simply that it would perform in a workmanlike manner according to industry standards. Consequently, we affirm the trial court's denial of the directed verdict motion.

III. The Second Summary Judgment—Damages Resulting from Foreclosure

¶29     Finally, Advanced Shoring contends that the trial court improperly denied the portion of its second motion for summary judgment in which it argued that the Hones were not entitled to damages as a matter of law because they no longer owned the house due to no fault of Advanced Shoring. To support its contention, Advanced Shoring directs our attention to *Mitchell v. Stewart*, 581 P.2d 564 (Utah 1978), for the

proposition that homeowners must demonstrate that they suffered actual damages to recover for construction defects after they have sold the property, *see id.* at 564–65, and to *Haymond v. Bonneville Billing & Collections, Inc.*, 2004 UT 27, 89 P.3d 171, for the proposition that a party lacks standing where the injuries are "largely self-inflicted," *see id.* ¶¶ 1, 7 (affirming the dismissal of plaintiff's claims for lack of standing because the claims all rested on the defendants' collection activities after the plaintiff wrote a check without sufficient funds). Although a breach of warranty claim "sounds in strict liability," a plaintiff must prove "that breach of the warranty is the direct and proximate cause of the damage." *SME Indus., v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶¶ 18, 20, 28 P.3d 669 (citation and internal quotation marks omitted).

¶30    According to Advanced Shoring, the Hones failed to present any evidence of actual damages caused by Advanced Shoring because they lost their home in foreclosure for reasons unrelated to Advanced Shoring's failure to remedy the subsidence problem, namely Michael Hone's inability to continue working due to health issues. The Hones, however, asserted in their opposition to summary judgment and at trial that the loss of the home was attributable to their having "to pay tens-of-thousands of dollars to fix the damage caused to the property by Advanced Shoring" as well as their inability to pay both the mortgage on their home, which had become uninhabitable, and the rent for another residence. Even if these facts were insufficient to create a dispute that precluded summary judgment, the Hones' contention that the loss was attributable to Advanced Shoring was developed further at trial, where the Hones submitted over a hundred receipts and canceled checks supporting their claims that they invested thousands of dollars in repair work and rent during the time that Advanced Shoring was working on their home. Thus, the parties presented competing factual explanations about what caused the Hones' loss of the home, and for the reasons stated above with regard to the warranty issue, the denial of summary judgment is not reviewable. *See Normandeau v. Hanson Equip., Inc.,* 2009 UT 44, ¶ 15, 215 P.3d 152 ("[W]hen disputed facts bear on the [summary judgment] decision or when new material facts emerge at trial that change the nature of that legal determination, parties then have an obligation to reraise the issue at trial in order to preserve it for appeal.").

¶31    Advanced Shoring's appeal on this issue was limited to the propriety of the denial of summary judgment. Accordingly, we do not otherwise address the trial court's damages decision.

CONCLUSION

¶32     Advanced Shoring's motions for summary judgment were originally denied on factual grounds. Even if those rulings were erroneous, material factual disputes "emerge[d] at trial," thus changing "the nature of [any] legal determination[s]" that may have been presented by the motions. *See id.* Under *Normandeau*, the development of material factual disputes at trial renders any pretrial denials of summary judgment unreviewable. *See id.* ¶¶ 9, 11.

¶33     We affirm the denial of the motion for directed verdict for failure to present expert testimony on the basis that the need for an expert depended on the scope of the warranty. The Hones presented evidence at trial to support a plausible theory that Advanced Shoring guaranteed that the house would not further subside into the soil, not simply that it would perform in a workmanlike manner according to industry standard. *See generally Florez v. Schindler Elevator Corp.*, 2010 UT App 254, ¶ 8, 240 P.3d 107 (noting that the appellate court "will sustain the denial if reasonable minds could disagree with the ground asserted for directing a verdict").

_____
Stephen L. Roth, Judge

-----

¶34     WE CONCUR:

_____
Carolyn B. McHugh, Judge

_____
J. Frederic Voros Jr., Judge